# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### NOVEMBER 1997 SESSION

FILED

February 11, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 01C01-9701-CR-00011 |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. THOMAS H. SHRIVER, |
| LARRY A. HOLBROOKS, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Possession of cocaine with intent |
| | | to sell; evading arrest) |

FOR THE APPELLANT:                    FOR THE APPELLEE:


DWIGHT E. SCOTT                       JOHN KNOX WALKUP
4024 Colorado Ave.                    Attorney General & Reporter
Nashville, TN 37209
                                      LISA A. NAYLOR
                                      Asst. Attorney General
                                      450 James Robertson Pkwy.
                                      Nashville, TN  37243-0493


                                      VICTOR S. JOHNSON, III
                                      District Attorney General


                                      JOHN ZIMMERMANN
                                      Asst. District Attomey General
                                      Washington Square, Suite 500
                                      222 Second Ave., North
                                      Nashville, TN 37201


OPINION FILED:_____



**AFFIRMED IN PART;**
**REVERSED AND DISMISSED IN PART**

**JOHN H. PEAY,**
Judge

**O P I N I O N**

The defendant was indicted in April 1995 on charges of possession with intent to sell more than twenty-six grams of cocaine, criminal trespass, and evading arrest. After a trial, a jury convicted him of the possession charge and the evading arrest charge. The defendant was sentenced to eight years in the Tennessee Department of Correction for the possession conviction and was sentenced to a concurrent sentence of eleven months and twenty-nine days for the evading arrest conviction. In this appeal as of right, the defendant contends that the evidence was insufficient to convict him of either offense and that the trial court erred when it refused to grant his motion to suppress the physical evidence in the case. After a review of the record and applicable law, we find that the motion to dismiss was properly denied and that the evidence sufficiently supported his conviction for possession with intent to sell more than twenty-six grams of cocaine. However, we reverse and dismiss the defendant's conviction for evading arrest.

The charges against the defendant stemmed from an incident on November 30, 1994, at the James Casey Housing Project in East Nashville. Metro Police Officer Damion Huggins testified that the police department had received several calls that day reporting drug activity in the area near Kirkpatrick Elementary School. As a result of these calls, Officer Huggins organized several officers to investigate the area. Officer Huggins and another officer decided to approach the area on foot so as to avoid early detection. Other officers continued to patrol the area from their patrol cars. Officer Huggins testified that as he approached a front porch area of one of the housing units, he observed several individuals involved in what appeared to have been a dice game. As he approached closer, those involved in the game saw him and began to run.

2

The officer then began to pursue the defendant. He testified that as he ran after the defendant, he saw the defendant reach into his front area as if he were trying to grab something. As the defendant continued to run and continued to tug at his front area, Officer Huggins saw a plastic bag sticking out of the defendant's pocket. Eventually, the defendant ran behind a nearby house and Officer Huggins ran around the front of the house hoping to cut off the defendant's escape. The officer testified that he had next seen the defendant crouched down behind a white picket fence near the front of the house. He further testified that the defendant had been doing something with his hands. At this point, Officer Huggins ran toward the back of the house in order to stop the defendant. When he approached the defendant, he saw that his front pocket was now empty and that the lining was hanging out.

Officer Huggins testified that he then determined that the defendant was not a resident of the James Casey Housing Project and thus he arrested him for trespassing. The officer then returned to the fenced area where the defendant had been crouched. There he found a large plastic bag with fifty-one smaller bags inside, each of which contained a rock of crack cocaine. Officer Huggins then read the defendant his Miranda rights, after which the defendant said, "You didn't find [the drugs] on me; so, you can't charge me with them."

Officer Huggins testified that three men, including the defendant, had run from the porch area when he had approached the group. However, he stated that the defendant had been the only person to run into the fenced area where the cocaine was eventually retrieved. He further testified that an elderly woman lived in the house that was surrounded by the fence.

3

Metro Police Officer William A. Stiltz testified that he had been one of the officers who had remained in the patrol cars. He said that he spotted one person running toward his car. As he apprehended this person, he spotted the defendant going around the back of a nearby house. He further saw the defendant crouching down at the fenced area at the corner of the house. Officer Stiltz testified that he had then yelled to Officer Huggins that the defendant was hiding behind the fence.

The State then presented evidence to establish the chain of custody for the cocaine. Terri McAbee, of the Metro property and evidence section, testified that the cocaine had been sealed and put in storage on November 30, 1994. She further testified that Officer Joy Moore had possession of the evidence on December 1, 1994. McAbee stated that the evidence had been delivered to the TBI lab on December 8, 1994, and had been returned to her office on February 22, 1995.

Donna White Flowers, a forensic chemist with the TBI, confirmed that her office received the evidence in a sealed plastic bag on December 8, 1994. She testified that she had begun her analysis on January 24, 1995, and had completed it on February 3, 1995. She determined that the rock-like substances were cocaine. She further testified that she had received one large plastic bag with fifty-one smaller bags each containing one rock. Two other rocks were also loose in the large bag. Flowers testified that she weighed the fifty-one rocks within their bags, then subtracted the weight of the bags to reach a total of 27.4 grams of cocaine. The other two rocks weighed 2.1 grams, for a total amount of 29.5 grams of cocaine.

On cross-examination, Flowers stated that she did not test each rock individually to determine if it were cocaine. She testified that the policy of the TBI was

to only test the square root of the number of samples, which in this case was eight. Thus, she tested eight rocks and determined all eight to be cocaine. She then performed a visual test and determined that all of the samples looked the same.

The defendant presented no evidence and a jury subsequently convicted him of possession with intent to sell more than twenty-six grams of cocaine and evading arrest. The defendant now appeals and makes several challenges to the sufficiency of the evidence. In addition, he challenges the trial court's refusal to grant his motion to suppress the cocaine found at the scene of his arrest. We choose to address the motion to suppress issue first.

The defendant argues that he was illegally pursued and stopped by Officer Huggins. He alleges that the officer did not have the requisite reasonable suspicion to stop him. After a hearing on this subject, the trial judge denied the defendant's motion to suppress. The findings of a trial judge on factual issues in a suppression hearing will be upheld unless the evidence preponderates otherwise. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

In this case, the trial court ruled from the bench that the defendant's motion lacked merit. The court found that Officer Huggins had been told to investigate an area in the James Casey Housing Project for drug activity. When Officer Huggins arrived on the scene, he found a dice game, which the trial judge noted, "in itself is illegal activity." The trial judge further found that when the participants in the game fled the area, "that [gave] any law enforcement officer reason to suspect -- to suspect that a crime [was] being committed. People don't run from the police unless they are -- they're doing something they don't want the police to know about." However, he concluded that the

5

case need not be analyzed under a probable cause or reasonable suspicion theory because the defendant had not actually been seized or arrested when the officer was merely in pursuit. In reaching this decision, the trial judge relied on the case of California v. Hodari D., 499 U.S. 621 (1991).

The facts of Hodari D. are quite similar to the facts in the case before this Court. In that case, police officers were patrolling a high crime area when they noticed several people gathered around a car. When the police officers approached, the individuals, including Hodari D., scattered and began to run. As Hodari D. was running, the officer shouted for him to stop. The officer noticed that while running, Hodari D. had removed something like a small rock from his pocket and had thrown it on the ground. Eventually, the police officer tackled Hodari D. and searched and handcuffed him. The officer then located the discarded rock and determined that it was cocaine. Before trial, Hodari D. filed a motion to suppress all evidence. The case eventually reached the Supreme Court, where the Court addressed the narrow issue of whether the officer's pursuit of Hodari D. constituted a "seizure" as defined within the Fourth Amendment.[1] The Court determined that it did not, thus, the evidence was not fruit of an unlawful seizure and could be used to prosecute Hodari D.

We see little difference between the case now before us and Hodari D. While we found no Tennessee cases specifically embracing the logic of Hodari D., we found none rejecting it.[2] Although we have failed to find any guidance from our own

---

[1]Because the State had conceded that the officer did not have the reasonable suspicion necessary to justify stopping Hodari D., the Court had no occasion to address that issue. Hodari D., 499 U.S. at 623 n.1.

[2]Our research produced only one published case in which Hodari D. was cited. In State v. Greene, 929 S.W.2d 376 (Tenn. Crim. App. 1995), a panel of this Court cited it for the proposition that there must be either a physical application of force by the officer or a submission to the officer's show of authority before a "seizure" occurs. In that case, the defendant argued that he had been "seized" when a police officer asked whether he had been driving the automobile in question. No police chase was

6

Supreme Court, we have determined to follow the rule announced by the United States Supreme Court in Hodari D. We conclude that the pursuit of the defendant was not a seizure, and thus the plastic bag of rock cocaine found by Officer Huggins was not fruit of an illegal seizure. Rather, the bag had been abandoned by the defendant and lawfully recovered by the officer. State v. Brenda Hill, No. 274, Bradley County (Tenn. Crim. App. filed August 7, 1990, at Nashville); see also Abel v. United States, 362 U.S. 217, 241 (1960). Therefore, we conclude that the defendant's motion to suppress was properly denied by the trial court.

As his remaining issues, the defendant attacks the sufficiency of the evidence that convicted him of possession with intent to sell cocaine and evading arrest. Specifically, the defendant claims that the State failed to establish a proper chain of custody for the cocaine, that the evidence was insufficient to prove the amount of cocaine found, and that the evidence was insufficient that the defendant had ever possessed the cocaine.

We will first address the chain of custody issue. It is well-established that as a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody. State v. Goodman, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982). However, the failure to call all of the witnesses who handled the evidence does not necessarily preclude its admission into evidence. See State v. Johnson, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984). While the State is not required to establish facts which exclude every possibility of tampering, the circumstances established must reasonably assure the identity of the evidence and its integrity. State v. Ferguson, 741 S.W.2d 125, 127 (Tenn. Crim. App. 1987). This

---

involved.

7

issue addresses itself to the sound discretion of the trial court, and the court's determination will not be disturbed in the absence of a clearly mistaken exercise of such discretion. State v. Beech, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987).

The defendant argues that the State failed to present an adequate chain of custody because no one testified as to the whereabouts of the evidence from the time Officer Moore had it on December 1, 1994, to the time it arrived at the TBI lab on December 8, 1994. Terri McAbee, who works in the Metro property section, testified that Officer Joy Moore had been in possession of the evidence on December 1. However, the State informed the court that Officer Moore was unable to testify due to health reasons. Instead, Lieutenant Bill Reese testified as to the normal policies followed by the property section. He testified that normal procedures call for evidence to be turned over to Officer Moore who is in charge of the drug vault. If the drugs need to be transferred anywhere, such as the TBI lab, Reese testified that Moore would transport the evidence in a sealed condition. He further testified that evidence is transported to the TBI on a weekly basis. On cross-examination, Reese stated that it is not standard policy for evidence to be taken to the TBI lab a week after an officer removed it from the property room.

First, we note that McAbee and Huggins identified the cocaine as the evidence they initially received. The cocaine was packaged in such a manner to make it distinctive from other drug evidence being held by the property section. Thus, the real question involves the integrity of the evidence, not the identification. The defendant maintains that the evidence was unaccounted for for as much as a week after being signed out by Officer Moore. However, it is not at all clear from the record that Moore actually removed the evidence. The following is from the direct examination of McAbee:

Q: . . . [W]hen were the drugs in Exhibit Six for identification given to you at the evidence room?

A: This was received on November 30, '94.

Q: Okay. When is the next time the drugs left the property and evidence room and why did they leave, according to the record?

A: Ummm . . . let's see. When it leaves the property room, it goes to the lab -- Is that -- is that what you're talking about?

Q: Yes.

A: It is -- it goes to the lab -- uh -- the – Officer Moore who receives and enters it in and Sergeant Sage. And, this was on -- uh -- let's see. Officer Moore has it on 12-1-94 and, then, she takes it to the lab.

Q: When does it go to the lab?

A: It goes to the lab -- uh -- 12-8-94.

Q: Who carried the drugs to the lab on 12-8-94?

A: Officer Joy Moore.

Q: And, who is she as relates to the evidence room?

A: She is the officer that logs in the drugs and -- uh -- properly stores them in our vault and takes them to the lab.

From the above, it is not at all apparent that Officer Moore actually removed the evidence from the property room. Rather, we infer, as did the trial court, that the drugs remained under "lock and key" until the time that they were delivered to the TBI lab. Additionally, McAbee testified that the evidence was sealed and Flowers testified that she received the evidence in a sealed condition. We conclude that the circumstances established by the State reasonably assured the integrity and identity of the evidence. Ferguson, 741 S.W.2d at 127 (Tenn. Crim. App. 1987). We find no abuse of discretion by the trial court on this issue.

The defendant next claims that the evidence was insufficient to prove that

9

the cocaine weighed in excess of twenty-six grams.  He claims that Flowers, who performed the analysis at the TBI lab, did not account for the weight of the bags when she stated the weight of the evidence.  To the contrary, Flowers testified that the total cocaine weight of the fifty-one bagged rocks and the two loose ones was 29.5 grams. She specifically testified that that number did not include the bag weight.  She explained that she weighed the bagged rocks as a group in their individual bags.  She then weighed one of the small bags, multiplied the weight by fifty-one, and subtracted that amount from the total weight of the bags plus the cocaine to arrive at the weight of the cocaine only. We see nothing to suggest that this evidence is not entirely sufficient to prove that the cocaine weighed in excess of twenty-six grams.  This issue is without merit.

The defendant next contends that the evidence was insufficient to prove that the cocaine found by Officer Huggins had actually been in the defendant's possession.  The defendant claims that his mere proximity to the area where the drugs were found is insufficient to support his conviction.  He argues that the drugs were found in a "high drug trafficking area" and that "drugs are discarded everywhere in the area."

A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case.  This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt.  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

When an accused challenges the sufficiency of the convicting evidence, we

10

must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

From our review of the record, we find ample evidence to support that the drugs had been in the defendant's possession. Officer Huggins testified that as he had been chasing the defendant, he had seen the defendant attempt to pull a plastic bag from his front pocket. He further testified that the defendant had been the only person who ran into the fenced area. Officer Huggins and Officer Stiltz testified that they had seen the defendant crouched in the corner of the fenced area where the drugs were eventually found. Officer Huggins further testified that he had seen the defendant doing something with his hands while he had been crouched by the fence. We find that it is entirely reasonable for the jury to have concluded that the evidence discovered by Officer Huggins had been in the defendant's possession. This issue is without merit.

As the defendant's final issue, he contends that the evidence was insufficient to convict him of evading arrest. He argues that he did not know the officer intended to arrest him or that he was under arrest. Tennessee Code Annotated § 39-16-603(a)(1) provides that:

> [I]t is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person:
>
> > (A) Knows the officer is attempting to arrest the person; or

11

(B) Has been arrested.

Obviously, the defendant had not been arrested when he began running from Officer Huggins. The issue is whether the officer was attempting to arrest the defendant and if so, whether the defendant knew that. From the evidence and from the initial discussion about the police pursuit, we cannot conclude that the officer was attempting to arrest the defendant. Officer Huggins' suspicion was aroused when the defendant and his companions began fleeing the front porch area and thus he gave chase. However, we cannot conclude that the officer was attempting to arrest the defendant because the officer lacked probable cause for an arrest. In fact, when the officer did detain the defendant, the officer had to ask a few questions to determine whether he could arrest the defendant for trespassing in the housing community. While the officer was merely in pursuit, he could not have been attempting to arrest the defendant, therefore, the defendant's conviction for evading arrest cannot stand.

In conclusion, we find that the defendant's motion to dismiss was properly denied and that the evidence sufficiently supported his conviction for possession with intent to sell more than twenty-six grams of cocaine. However, we reverse and dismiss the defendant's conviction for evading arrest.

_____
JOHN H. PEAY, Judge


CONCUR:


_____
JOSEPH M. TIPTON, Judge


12

_____
DAVID H. WELLES, Judge