IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2001

## STATE OF TENNESSEE v. PERRY THOMAS RANDOLPH

**Direct Appeal from the Criminal Court for Putnam County**
**No. 99-0493     Leon Burns, Judge**

---

**No. M2000-2293-CCA-R3-CD - Filed April 4, 2001**

---

The State appeals from the Putnam County Criminal Court's order granting the Defendant's motion to suppress. The Defendant, Perry Thomas Randolph, was charged by indictment with one count of theft, one count of aggravated assault, one count of burglary, and one count of resisting arrest. The Defendant filed a motion to suppress, challenging his initial stop and seizure by the police. The trial court found the Defendant's seizure illegal because it failed to meet the minimal requirements of Terry v. Ohio. After review, we find it unnecessary to examine the issue of whether the officer had sufficient articulable facts to justify stopping the Defendant because we find no such stop occurred. The judgment of the trial court is reversed and the case remanded for further proceedings in accordance with this opinion.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed and Remanded.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Charles L. Hardin, Cookeville, Tennessee, for the Appellee, Perry Thomas Randolph.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; David H. Findley, Assistant Attorney General; William Edward Gibson, District Attorney General; and David Patterson, Assistant District Attorney General, for the Appellant, State of Tennessee.

**OPINION**

The State appeals as of right the trial court's order granting the Defendant's motion to suppress all evidence seized resulting from his arrest. See generally Tenn. R. App. P. 3(c)(1). The Defendant was charged by a Putnam County Grand Jury with one count of theft, one count of aggravated assault, one count of burglary, and one count of resisting arrest. The State contends that the trial court erred by suppressing the evidence because the proof established that the officer had

reasonable suspicion to believe that the Defendant had committed, was committing, or was planning on committing a criminal offense. After review of the record, we conclude that, because the Defendant failed to yield to the officer's show of authority, no seizure occurred. Furthermore, the Defendant's ultimate stop was the result of his own acts. When no "seizure" occurs, there is no necessity to analyze the case under a probable cause or reasonable suspicion standard. Therefore, the judgment of the trial court is reversed and the case remanded for further proceedings in accordance with this opinion.

## Background

Following the suppression hearing, the trial court entered the following findings:

Officer Harrington testified that he was dispatched to Doc's Auto Repair Shop on 1st Street [near Hickory Avenue] in response to a report that a man has been seen crouched by the cars on the lot. The officer was approaching the auto lot from the north on Hickory Street when he noticed the defendant coming toward him on a bicycle at the intersection of 4th Street and Hickory.[1] The officer then asked the dispatcher for a description of the suspect and was told a [Caucasian] male was the only description available. As the defendant, a [Caucasian] male, got to 5th and Hickory the officer activated his blue lights and asked the defendant to stop since he was coming from the direction of the suspected crime scene. The officer stated the purpose of activating the blue lights was to make the defendant aware that the officer was there but it was also his intention to stop the suspect and identify who he was. The defendant did not stop as commanded even with a second command to stop but sped away on his bicycle.[2] The officer turned [his patrol car around] and pursued and found the bicycle in the road on 6th Street and the defendant in a ditch. The defendant was pulling what turned out to be a shotgun from his pants which was pointed over the head of the officer. Officer Harrington drew his weapon and ordered the defendant to drop his weapon. The defendant dropped the weapon and some ammunition and then turned and ran. He was subsequently subdued by the officer's canine partner.

---

[1]The proof at the suppression hearing established that the police officer's first observation of the bicycling Defendant occurred four blocks from the crime scene and the pursuit by the police involved a distance of one and one-half blocks.

[2]The officer testified that the Defendant was "about three feet away" from his patrol car when he passed by and after asking him to stop, "he sped away even faster."

## Standard of Review

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000); State v. Daniel, 12 S.W.3d 420, 423-424 (Tenn. 2000) (citing State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). Indeed,

> [q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.

Binette, 33 S.W.3d at 217 (quoting Odom, 928 S.W.2d at 23). If the evidence does not involve questions of credibility, the reviewing court must examine the record *de novo* without a presumption of correctness. See Binette, 33 S.W.3d at 217. Notwithstanding the nature of the proof, the application of the law to the facts remains a question of law that requires *de novo* review. Daniel, 12 S.W.3d at 423.

> In granting the Defendant's motion to suppress, the trial court concluded:
> It is clear from the facts in this case that the encounter between Officer Harrington and the defendant was more than a brief police-citizen encounter which would require no objective justification. It is obvious that the officer was making, at least initially, a brief investigatory detention which would require reasonable suspicion based on articulable facts. . . . In this court's opinion the defendant had been seized without sufficient grounds and therefore the physical evidence seized during the encounter and any statement made by the defendant at the scene must be suppressed . . . [3]

## Analysis

"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968). In other words, an investigatory stop of a person is constitutionally permissible if the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998).

However, not all personal intercourse between police officers and citizens involve a "seizure" of a person. See Terry v. Ohio, 392 U.S. at 19 n.16, 88 S. Ct. 1868, 1879 n.16; State v. Moore, 776

---

[3]Statements of counsel at the suppression hearing indicate that the shotgun and ammunition possessed by the Defendant were taken in the burglary of Doc's Auto Repair Shop.

S.W.2d 933, 937 (Tenn. 1989) (no "stop" of suspect's vehicle occurred by police where suspect had stopped vehicle on side of public highway). A seizure does not occur simply because a police officer approaches an individual and asks a few questions. Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991). So long as a person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required. Id. at 434, 111 S. Ct. at 2386 (emphasis added) (citation and internal quotation marks omitted); see also United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980). A person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Mendenhall, 446 U.S. at 554, 199 S. Ct. at 1877; see also Florida v. Royer, 460 U.S. 491, 502, 103 S. Ct. 1319, 1326-1327 (1983).

The State, relying on a 1997 opinion of this court, argues, on appeal, that the police officer's actions did not constitute a stop since the Defendant failed to stop when the police officer activated his blue lights and began pursuit. See State v. George Weley Harville, Jr., No. 01C01-9607-CC-00300 (Tenn. Crim. App. at Nashville, Oct. 24, 1997). The Defendant responds that Officer Harrington's activation of his blue lights effectively constituted a seizure for Fourth Amendment purposes. Specifically, he cites as authority State v. Pulley, 863 S.W.2d 29 (Tenn. 1993), for the proposition that "when an officer turns on his blue lights, a stop has been clearly initiated," and State v. Daniel, 12 S.W.3d at 426, for the proposition that an encounter becomes a Fourth Amendment seizure if an officer (1) pursues an individual who has attempted to terminate the contact by departing or (2) verbally orders a citizen to stop and answer questions.[4] Notwithstanding this court's determination of whether a "seizure" of the Defendant was effected by Officer Harrington, the State contends that any such "stop" was based upon reasonable suspicion.

When a police officer attempts to effect either a Terry stop or an arrest by a show of authority, a seizure does not occur unless the subject yields to the show of authority. Terry, 392 U.S. at 19, 88 S. Ct. at 1879 n. 16. In Michigan v. Chesternut, 486 U.S. 567, 108 S. Ct. 1975 (1976), the Supreme Court held that the "pursuit" of a suspect on foot by an officer in a patrol car did not constitute a "seizure" implicating Fourth Amendment protections. Importantly, in a separate

---

[4] In Daniel, our supreme court outlined various tests employed in determining when a police encounter constitutes a "seizure." Included in the court's analysis were seven scenarios establishing "seizures" adopted from 4 Wayne R. LaFave, Search & Seizure, § 9.3(a) (3d ed. 1996 & Supp. 1999). See Daniel, 12 S.W.3d at 426. Two of these tests, (1) pursuit of an individual who has attempted to terminate contact and (4) verbal order for citizen to stop, are relied upon by the Defendant in the present case to support the finding of an unlawful seizure. We are constrained to note that the cases relied upon by LaFave for the proposition that "a stop occurs upon the police officer's display of authority," (tests (1) and (4)), see, e.g., In re D.J., 532 A.2d 138, 140 (D.C. 1987), *holding modified by*, Allison v. United States, 623 A.2d 590 (D.C. 1993); Johnson v. United States, 468 A.2d 1325 (D.C. 1983), *opinion vacated by*, 496 A.2d 592 (D.C. 1985), are no longer persuasive based upon the Supreme Court's pronouncement in California v. Hodari D., 499 U.S. 621, 624-26, 111 S. Ct. 1547, 1550 (1991) (seizure does not occur in the absence of an application of physical force unless the subject actually yields). Of equal importance, we note that the facts in State v. Pulley and in those cases cited as authority by LaFave reflect that, in each case, the suspect's stop was effected as a result of police authority. As such, these cases do not address the situation where, as in this case, the suspect refuses to yield to the pursuit of the police.

concurring opinion, Justices Kennedy and Scalia observed that the court's opinion permits the holding that "whether or not the officer's conduct communicates to a person a reasonable belief that they intend to apprehend him, such conduct does not implicate Fourth Amendment protections until it achieves a restraining effect." Id. at 577, 108 S. Ct. at 1981 (emphasis added). Again, in California v. Hodari D., 499 U.S. 621, 626-627, 111 S. Ct. 1547, 1550-1551 (1991),[5] the Supreme Court rationalized that there is no seizure where the suspect continues to flee in light of a police officer yelling, "Stop in the name of the law." Hodari D., 499 U.S. at 626, 111 S. Ct. at 1550.

In the present case, the Defendant refused to yield to the police officer's request to stop. Thus, we find it unnecessary to resolve the case under a probable cause or reasonable suspicion standard because the Defendant was neither seized nor arrested.[6] Moreover, we are not required to determine the possibility of whether a seizure could have occurred as a result of Officer Harrington's pursuit. See Hodari D., 499 U.S. at 628, 111 S. Ct. at 1547. From the facts introduced at the suppression hearing, Defendant Robinson's ultimate "stop" was not the result of the "restraining effects" of the police or from the officer's "show of authority," but rather was the result of the Defendant's poor bicycling skills.[7] See generally Hodari D., 499 U.S. at 629, 111 S. Ct. at 1552 (citing Hester v. United States, 265 U.S. 57, 58, 44 S. Ct. 445, 446 (1924)) (defendant's own acts, not "show of authority," produced stop). Upon approaching the Defendant, Officer Harrington observed the Defendant standing near his overturned bicycle, holding his shirt with one hand and, with the other, removing a shotgun from his pants. Clearly, at this point, Officer Harrington had sufficient probable cause to detain the Defendant. State v. Henning, 975 S.W.2d 290, 300 (Tenn. 1998) (probable cause exists if facts and circumstances within officer's knowledge at the time of arrest, and of which officer had reasonably trustworthy information sufficient to warrant prudent man in believing that defendant had committed or was committing an offense).

---

[5]In Hodari D., 499 U.S. at 621, 111 S. Ct. at 1547, police officers were patrolling a high crime area when they noticed several people gathered around a car. When the police officers approached, the individuals, including Hodari D., scattered and began to run. As Hodari D. was running, the officer shouted for him to stop. The officer noticed that while running, Hodari D. had removed something like a small rock from his pocket and had thrown it on the ground. Eventually, the police officer tackled Hodari D. and searched and handcuffed him. The officer then located the discarded rock and determined that it was cocaine. Before trial, Hodari D. filed a motion to suppress all evidence. The United States Supreme Court determined that the pursuit of Hodari D. did not constitute a seizure as defined by the Fourth Amendment and thus the evidence was not the fruit of an unlawful seizure. See State v. Holbrooks, 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998).

[6]Although we need not reach the issue of whether the officer's stop was based on reasonable suspicion, we do note, in this regard, the United States Supreme Court's recent opinion, Illinois v. Wardlow, – U.S. –, 120 S. Ct. 673 (2000), holding that a person's unprovoked flight from officers in a high crime area supported a finding of reasonable suspicion that the person was involved in criminal activity which justified the stop.

[7]We would acknowledge that the Defendant's cycling skills may have been compromised by his carrying of a shotgun inside his pants. Additionally, Officer Harrington testified, "[t]he only thing unusual I noticed was that he was standing up riding the bicycle."

In consideration of the foregoing and the record as a whole, we reverse the trial court's order granting the motion to suppress and remand this case for further proceedings.

_____
DAVID G. HAYES, JUDGE