# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

### Assigned on Briefs May 3, 2011

## STATE OF TENNESSEE v. WADE PAYNE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-03633    James M. Lammey, Jr., Judge**

**No. W2010-01735-CCA-R3-CD  - Filed January 17, 2012**

A Shelby County Criminal Court jury convicted the appellant, Wade Payne, of selling less than .5 grams of cocaine, possessing cocaine, and possessing less than .5 grams of cocaine with the intent to sell.  The three convictions were merged into a single conviction for selling cocaine, for which the appellant received a sentence of fifteen years incarceration in the Tennessee Department of Correction. On appeal, the appellant contends that the State failed to sufficiently establish a chain of custody for the cocaine.  He also contends that the trial court erred by admitting the testimony of an officer regarding the preliminary testing of the cocaine and in admitting recordings of telephone calls made by the appellant while he was in jail.  Further, the appellant challenges the sufficiency of the evidence supporting his conviction.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined.  DAVID H. WELLES, SP.J., not participating.

Barry W. Kuhn (on appeal) and Jennifer H. Case (at trial), Memphis, Tennessee, for the appellant, Wade Payne.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The proof adduced at trial revealed that on the afternoon of June 12, 2009, undercover

Memphis Police Detective Shawn May was on the sidewalk in front of a store near the intersection of Kerr and Marjorie, an area known for narcotics activity. The appellant approached Detective May and asked what he wanted. Detective May responded that he wanted a "twinkie" of "hard," which meant a .1 to .2 gram rock of crack cocaine costing twenty dollars. The appellant agreed to obtain the drugs for Detective May, and the officer gave the appellant twenty dollars. The appellant went behind a carwash and returned after a couple of minutes with crack cocaine, which he handed to Detective May. The appellant said that he would be in the area if Detective May needed anything in the future. Detective May made a video recording of the appellant handing him the drugs, but the recording did not capture him paying the appellant.

In the early afternoon hours of June 17, 2009, Detective May returned to the store near the intersection of Kerr and Marjorie. The appellant got into Detective May's vehicle, and Detective May said that he wanted twenty dollars' worth of crack cocaine. The appellant directed Detective May to a location off Waldorf. When they arrived, Detective May gave the appellant twenty dollars. The appellant went into a residence, returned a couple of minutes later with crack cocaine, and gave the drugs to Detective May. Detective May then drove the appellant back to the store. Detective May's video recording captured little of this transaction.

After each purchase, Detective May put the drugs in a small bag that he numbered and placed in a box that was hidden in his car. At the end of each day, he went to an "offsite" location and wrote a report documenting the purchase. He put the bags containing the purchased drugs in manila property envelopes and placed the envelopes in a secured evidence mailbox, for which Anthony Godwin, the Memphis Police Department evidence custodian, had the only key.

When Officer Godwin retrieved the evidence collected by Detective May on June 12, 2009, both the brown envelope and the small plastic bag inside the envelope were sealed. The substance inside the bag weighed less than .1 gram and preliminarily tested positive for cocaine. After testing, Officer Godwin sealed the plastic bag and gave it to Detective Jonathon Clapp, who took the evidence to the police property room. When Officer Godwin retrieved the substance obtained by Detective May on June 17, both the brown property envelope and the small plastic bag inside the envelope were sealed. Officer Godwin removed the substance from the bag; it weighed .1 gram and preliminarily tested positive for cocaine. Thereafter, he placed the substance in a plastic bag, sealed it, put it in an evidence bag, and gave it to Detective Oslanzi, who took the evidence to the property room.

On November 18, 2009, Detective Louis Brown took the evidence from both purchases to the Tennessee Bureau of Investigation (TBI) for testing. The items were sealed

-2-

in a brown package that Detective Brown placed into a larger plastic envelope, which he then sealed and initialed.

When TBI crime laboratory forensic scientist Melanie Johnson opened the larger, sealed plastic bag, she noticed that the yellow envelopes inside were fastened but were not sealed with tape; however, the clear bags inside the envelopes were sealed. Testing revealed that the substance bought on June 17 weighed .09 grams. The substance bought on June 12, which she described as "residue," weighed 0 grams. Both substances tested positive for cocaine base, the "rock-like form" of cocaine.

Rachel Bowen, a Shelby County Sheriff's Department employee, explained that after an individual is arrested, he or she is assigned an "R&I number." Shelby County Sheriff's Deputy Michael Harber testified when a telephone call is made by a jail inmate, the call is recorded and identified by the inmate's R&I number. Deputy Harber retrieved recordings of calls the appellant made from jail on October 14, 2009. The recordings, which were played for the jury, reflected that the appellant spoke with his mother, a female, and a male. During the calls, the appellant stated that he had seen the recordings of the undercover drug buys and that his face was never shown on the "films" of the buys. He said, "I know it was me, but they don't know."

The defense did not put on any proof at trial.

Based upon the foregoing, the jury convicted the appellant of selling less than .5 grams of cocaine, possessing cocaine, and possessing less than .5 grams of cocaine with the intent to sell on June 12, 2009.[1] The trial court merged the convictions and sentenced the appellant to fifteen years.

## II. Analysis

### A. Evidentiary Issues

On appeal, the appellant argues that the State did not establish the chain of custody for the cocaine. The appellant further complains that the trial court erred in allowing Officer Godwin to testify regarding the results of a preliminary test on the cocaine. The appellant also contends that the trial court erred in allowing into evidence the recordings of the appellant's jail telephone calls. We will address each of these issues in turn.

---

[1] Because the jury was unable to reach a unanimous verdict on the offenses occurring on June 17, 2009, the trial court declared a mistrial as to those charges.

The admissibility of evidence lies within the sound discretion of the trial court. State v. Carruthers, 35 S.W.3d 516, 574 (Tenn. 2000). The trial court's discretion in determining the admissibility of evidence is generally circumscribed by the Tennessee Rules of Evidence. See State v. Young, 196 S.W.3d 85, 105 (Tenn. 2006). An appellate court will not interfere with the lower court's exercise of that discretion absent a clear showing of abuse. See State v. Turner, 352 S.W.3d 425, 428 (Tenn. 2011).

## 1. Chain of Custody

First, we will address the appellant's argument that the State failed to sufficiently establish the chain of custody for the cocaine and that there was "clear evidence of tampering." Generally, Tennessee Rule of Evidence 901 governs the authentication of evidence. In order to admit physical evidence, the party offering the evidence must either introduce a witness who is able to identify the evidence or establish an unbroken chain of custody. State v. Holbrooks, 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998). "Even though each link in the chain of custody should be sufficiently established, this rule does not require that the identity of tangible evidence be proven beyond all possibility of doubt; nor should the State be required to establish facts which exclude every possibility of tampering." State v. Cannon, 254 S.W.3d 287, 296 (Tenn. 2008). However, the circumstances must establish a reasonable assurance of the identity of the evidence. State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). "The purpose of the chain of custody is to 'demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000) (quoting State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)). Whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's determination will not be overturned in the absence of a clearly mistaken exercise of that discretion. Holbrooks, 983 S.W.2d at 701.

The appellant maintains that "[t]he cocaine was in a small, sealed plastic bag inside a sealed manila envelope when it was delivered by Officer Brown to the TBI. When Melanie Johnson received it, the seal had been broken. Therefore, Exhibit #5 [the cocaine] should not have been admitted into evidence." (Emphasis omitted). The State argues that the testimony sufficiently established the chain of custody.

In the instant case, Detective May testified that, after each purchase of cocaine from the appellant, he took the cocaine to an "offsite location" where he put the cocaine into a brown paper bag, labeled the bag, and put the bag into a secured evidence locker. Officer Godwin testified that on June 16, he retrieved from the secured evidence locker the substance that was bought by Detective May on June 12; the outer brown envelope and the small plastic bag inside the envelope were sealed. Officer Godwin tested the substance, which was

positive for cocaine. Officer Godwin resealed the evidence. Detective Clapp, who was helping Officer Godwin, filled out the plastic property envelope and submitted the evidence to the property clerk. On June 18, Officer Godwin retrieved from the secured locker the substance that was bought by Detective May on June 17. The small plastic bag inside the brown envelope was sealed. Officer Godwin tested the substance, which was positive for cocaine. Officer Godwin turned the evidence over to Detective Oslanzi, who took the evidence to the property clerk. Detective Brown took both substances to the TBI.[2] TBI scientist Melanie Johnson said that the plastic outer bag was sealed and that the yellow envelopes inside were fastened but not sealed with tape.

The appellant contended that there was evidence of tampering. The trial court responded:

> I think what you're referring to is . . . the property and evidence for MPD was not sealed; but the contents on the inside were sealed - the clear plastic bag for each individual rock that was contained in it was in a sealed state; and there's no evidence that that seal was ever broken until [Johnson] got it. So, I still - I'll note your exception, but I'm going to show it admissible at this time.

We agree with the trial court that the evidence was sufficient to "reasonably establish the identity of the evidence and its integrity." Scott, 33 S.W.3d at 760. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the cocaine. This issue is without merit.

## 2. Testimony Regarding Test on Cocaine

Next, the appellant contends that the trial court erred by allowing Officer Godwin to testify about the preliminary test he performed on the substances bought by Officer May, which revealed the substances were cocaine. The appellant argues that the testimony did not meet the requirements of Tennessee Rules of Evidence 702 and 703 or McDaniel v. CXS Transportation, Inc., 955 S.W.2d 257 (Tenn. 1997).

Generally, expert testimony must be both relevant and reliable before it may be admitted. McDaniel, 955 S.W.2d at 265. The trial court has broad discretion in determining the qualifications, admissibility, relevancy, and competency of expert testimony. See State v. Stevens, 78 S.W.3d 817, 832 (Tenn. 2002). As such, this court will not overturn the trial

---

[2] At trial, both substances were collectively identified as Exhibit 5.

court's ruling on the admissibility of expert testimony absent an abuse of that discretion. See State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993).

Tennessee Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Tennessee Rule of Evidence 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

In the instant case, Officer Godwin specifically testified that he was not a chemist nor was he an expert in the chemical testing of drugs. Regardless, he testified that he had attended a Drug Enforcement Agency (DEA) narcotics school. While at the school, Searcy Laboratories, the makers of the Scott Reagent Test Officer Godwin used, instructed the attendees how to perform the test. Officer Godwin stated that the attendees were then tested to determine their proficiency in performing the Scott Reagent Test, and Officer Godwin was certified to perform the test.

Officer Godwin described the Scott Reagent Test as a three-step process. He explained that he started by placing a small amount of the substance into the test kit. He said that he "pop[ped] the first ampule," which tinted the substance blue. He stated that the appearance of the substance did not change much when he broke the second ampule, but that when he broke the third ampule, the substance "dissolve[d], and . . . a pink over blue

solution, [indicated] a positive preliminary test for cocaine."

Officer Godwin testified that he had never received a false positive while using the Scott Reagent Test. However, he acknowledged that for a higher level of scientific reliability, law enforcement sent the substance to the TBI for further testing. Subsequently, TBI Special Agent Johnson tested both substances and found that the substances contained cocaine base.

This court has previously stated:

> Ordinarily, law enforcement officers in arrests for illegal drug offenses will run a field test on suspected controlled substances for an indication as to whether the suspected substance is positive of a controlled substance. Thus, if the field test is positive, then the suspected controlled substances are subjected to a chemical or scientific analysis for confirmation and utilized at trial. . . . Law enforcement officers may, based upon proper training, testify as to the results of field tests indicating the existence of suspected controlled substances. State v. Anderson, 644 S.W.2d 423, 424 (Tenn. Crim. App.), per. app. dismissed (Tenn. 1982); State v. Hill, 638 S.W.2d 827, 830 (Tenn. Crim. App. 1982).

State v. Mikel Primm, No. 01C01-9712-CC-00571, 1998 WL 849305, at *2 (Tenn. Crim. App. at Nashville, Dec. 9, 1998). In light of Officer Godwin's testimony that he was certified to perform the test, that the test was a preliminary step only, and that the results were later confirmed by the TBI, we conclude that the trial court did not err in admitting the testimony.

### 3. Jail Telephone Calls

The appellant complains that the trial court erred in allowing the jury to hear recordings of two telephone calls that the appellant made from the Shelby County Jail on October 14, 2009. The appellant argues that the statements on the recordings do not clearly reflect whether they refer to the events of June 12 or June 17. The appellant argues that the calls are not relevant under Tennessee Rule of Evidence 402. He also maintains that there was insufficient proof of the identities of either caller to comply with Tennessee Rule of Evidence 901(b)(6). He further contends that there was no proof that the recordings "are accurate reproductions of the subject conversations."

a. Relevance

First, we will address the appellant's complaint regarding the relevance of the calls. Generally, to be admissible evidence must be relevant to some issue at trial. See Tenn. R. Evid. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401; see also State v. Kennedy, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999). However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. It is within the trial court's discretion to determine whether the proffered evidence is relevant; thus, we will not overturn the trial court's decision absent an abuse of discretion. See State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995). "Under this standard, we will not reverse unless the trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Cannon, 254 S.W.3d 287, 295 (Tenn. 2008) (internal quotations and citations omitted).

In the instant case, the recordings reflect that on October 14, 2009, the appellant called his mother. He told her that he had been to court and had seen the evidence regarding the charges against him. He said the State did not have much evidence against him, noting that his face was not captured on either of the "films" of the two drug transactions. The appellant said that he knew he had taken part in the buys but that the camera failed to capture him either time. Clearly, the calls are relevant to the appellant's guilt.

The appellant also argues that the statements on the recordings were unfairly prejudicial because each call began with a statement that the call was made by an inmate at the Shelby County Jail, the appellant used obscenities during the calls, and the appellant referred to the effect of his "prior record" on any potential sentence he might receive. In support of this argument, the appellant cites State v. Spike Hedgecoth, No. E2002-01869-CCA-R3-CD, 2003 WL 22668873 (Tenn. Crim. App. at Knoxville, Nov. 12, 2003). Hedgecoth was convicted of three counts of theft. Id. at *1. At trial, the State submitted an audiotape recording of a telephone call made by Hedgecoth while he was incarcerated. Id. at *3. This court noted that the recording reflected that Hedgecoth was in jail at the time of the call, that such information was prejudicial, and that the information should have been redacted. Id. at *4. This court concluded that the probative value of the recording was outweighed by the prejudicial effect of Hedgecoth's "tone of voice, his reference to other crimes, his cursing, and his use of racial epithets." Id. at **4-5. However, this court further stated that such error was harmless. Id. at *4.

We conclude that Hedgecoth is distinguishable from the instant case. We acknowledge that during the calls in the instant case, the appellant used foul language and referenced his prior criminal record. However, unlike Hedgecoth, the appellant confesses to the crimes during the calls, making the recordings highly probative to the issue of his guilt. Thus, we conclude that the probative value of the telephone conversations was not outweighed by the prejudicial effect.

b. Authentication

Next, we turn to the appellant's contention that the recordings of the calls were not properly authenticated. Tennessee Rule of Evidence 901 provides that authentication may be made by "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Tenn. R. Evid. 901(b)(5). Specifically, one authority has noted that

> if the witness has, at the time of testifying, adequate familiarity with the speaker's voice, he or she may opine whether the disputed testimony is the alleged speaker's voice, Rule 901(b)(5). Familiarity can be gained in a relatively short period of time, and as the result of conversations occurring before or after the conversation that was identified.

Neil P. Cohen et al., Tennessee Law of Evidence § 9.01[7], at 9-11 (LEXIS publishing, 5th ed. 2005) (footnote omitted). "For authentication purposes, voice identification by a witness need not be certain; it is sufficient if the witness thinks he can identify the voice and express his opinion." Stroup v. State, 552 S.W.2d 418, 420 (Tenn. Crim App. 1977).

In the instant case, Detective May testified that he listened to the recordings of the calls and that, from his prior conversations with the appellant, he was able to identify the appellant as the caller. Further, the caller was identified as "Wade Payne," and the calls were made by an individual with the appellant's R&I number. Therefore, we conclude that the caller was sufficiently identified as the appellant.

The appellant also argues that the statements on the recordings do not clearly reflect whether they refer to the events of June 12 or June 17. We disagree. During the calls, the appellant said that one of the films depicted him from only the shoulder down. The video of the June 12 buy depicted the appellant's shoulder but not his face. Additionally, the appellant also said during the calls that he could not be seen in the other film. The appellant cannot be seen in the recording of the June 17 drug buy.

Further, the appellant argues that there is no evidence "that the recordings are an accurate account of the conversations contained therein." We disagree. Officer Harber testified that every call made by an inmate is recorded on a database on a hard drive and that the calls are cataloged by the inmate's R&I number. Officer Harber testified that he downloaded onto a CD the calls which were saved on the hard drive under the appellant's R&I number. The trial court stated, "I don't think he's required to have to listen to every word of every conversation."

The appellant objected, noting that there had been no testimony about the accuracy of the recording device. The court stated:

> I don't think he has to be an expert in recording devices in order
> for this to be played. It's something that can be played on an
> ordinary . . . disc player. I wouldn't see where someone would
> have to have an expertise in that area. . . . I think any one of us
> could probably make a copy of an audio off of a computer onto
> a disc. I mean that's pretty common knowledge.

Rule 901(b)(9) provides that authentication may be established by "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result." This provision may be used to authenticate tape recordings. Cohen et al., Tennessee Law of Evidence § 9.01[11], at 9-14. However, due to the commonplace nature of such processes, "one rarely hears an objection to their admissibility on the basis that the process itself is unreliable. . . . [For example,] Rule 901(b)(9) would permit [a tape recording] to be authenticated upon sufficient proof of the reliability of the machine and the quality of its product." Id. We conclude that the trial court did not abuse its discretion in finding that the audiotapes were properly authenticated.

B. Sufficiency of the Evidence

Finally, the appellant argues that the evidence was insufficient to establish his guilt. On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v.

Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Our criminal code provides that it is a Class B felony "for a defendant to knowingly . . . [s]ell a controlled substance," such as cocaine. Tenn. Code Ann. § 39-17-417(a)(3) and (c)(1). The appellant does not argue that the substance was not cocaine or that he did not sell the substance to Officer May. Instead, the appellant reasserts his claim regarding chain of custody, arguing that

> [t]he key element to proving guilt would be to connect the item introduced as part of Exhibit #5 [namely the cocaine], that was in the small plastic bag inside the envelope dated June 12, as the item that Officer May bought from [the appellant]. Officer May's testimony does not do that.

In other words, the appellant maintains that because the cocaine in Exhibit 5 was not properly identified as the same cocaine purchased from the appellant on June 12, the evidence was insufficient to sustain his conviction. We disagree.

Officer May testified that after he purchased the cocaine from the appellant on June 12, he placed the cocaine in an evidence bag, sealed the bag, and placed the bag in a secured evidence lockbox. The evidence was later retrieved by Officer Godwin, who turned it over to Detective Clapp. Detective Clapp took the evidence to the TBI for testing, which revealed that the substance was cocaine. We conclude that the evidence was sufficient to sustain the appellant's conviction.

## III. Conclusion

Based upon the foregoing, we conclude that the State properly established the chain of custody for the cocaine, the trial court did not err by allowing Officer Godwin to testify regarding the preliminary test results, the recordings of the telephone calls were properly authenticated, and the evidence was sufficient to sustain the appellant's conviction for selling less than .5 grams of cocaine. Accordingly, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE