# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 15, 2012 Session

## STATE OF TENNESSEE v. EARNEST LANING

### Direct Appeal from the Criminal Court for Hamblen County
No. 10CR768     John Dugger, Jr., Judge

### No. E2011-01882-CCA-R3-CD - Filed August 6, 2012

A Hamblen County Criminal Court Jury convicted the appellant, Earnest Laning, of driving under the influence (DUI), second offense, and the trial court sentenced him to eleven months, twenty-nine days to be served as 135 days in jail and the remainder on probation. On appeal, the appellant contends that the trial court erred by allowing the State to introduce his blood test result into evidence because the State failed to establish the chain of custody. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Jonathan M. Holcomb, Morristown, Tennessee, for the appellant, Earnest Laning.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Kimberly Morrison, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The appellant does not contest the sufficiency of the evidence.  Taken in the light most favorable to the State, the evidence shows that on the night of July 29, 2010, Officer Devin Cribley of the Morristown Police Department stopped a car for crossing the white "fog line." Officer Cribley approached the car and spoke with the driver, who was the appellant.  The appellant had bloodshot eyes, had slurred speech, and smelled of alcohol.  The appellant told

the officer that he was coming from the AMVETS Club and had consumed one-half of a beer. Officer Cribley gave the appellant "pre-exit tests." The appellant performed poorly on the tests, so Officer Cribley had the appellant get out of the car and perform field sobriety tests. Based on the appellant's performance on the field sobriety tests, Officer Cribley thought he was intoxicated and arrested him. The appellant agreed to submit to a blood test, so Officer Cribley transported him to Morristown Hospital. The blood test revealed that the appellant's blood contained 0.22 gram percent of ethyl alcohol.

## II. Analysis

The appellant contends that the trial court erred by allowing the State to introduce the blood test result into evidence because the State failed to establish the chain of custody for the evidence. The State argues that the trial court did not abuse its discretion by admitting the test result. We agree with the State.

At trial, Officer Cribley testified that the appellant agreed to submit to a blood test and that he transported the appellant to the laboratory at Morristown Hospital. Officer Cribley also took a blood kit to the hospital. He described the kit as a box that contained two blood tubes, a bag, and a form to record the appellant's personal information. Officer Cribley watched the lab technician draw the appellant's blood, put the blood tubes in the bag, and seal the bag. The technician put the bag into the box and gave the box to the officer. Officer Cribley filled out the form in the box. The form included the appellant's name, address, date of birth, and driver's license information; the officer's information; and the lab technician's information. Officer Cribley said he put the form in the box and sealed the box with a "sticky flap on the bottom side of the box that folds over it." He said he initialed and dated the flap to indicate if someone opened the box, transported the appellant to jail, and put the kit in the evidence refrigerator "that is under lock and key." The State asked Officer Cribley about the test result. The defense objected to the officer's testifying about the result because "[u]ntil an appropriate chain of custody is established we'll never know how the box got from his locked refrigerator to the lab." The trial court sustained the objection.

On cross-examination, Officer Cribley testified that the laboratory technician was a phlebotomist and that "I think her name was Heather something. . . . I don't ask them their name. It's on the form." He was five or six feet away from the appellant and the technician at the time of the blood draw. Initially, he said that the appellant's blood kit was mailed to the Tennessee Bureau of Investigation (TBI). However, he later said that he did not know if the kit was mailed or hand-delivered to the TBI. Only one person, Ricky Sanders, was authorized to remove evidence from the locked refrigerator and mail it to the TBI. Officer Cribley said, "I can't testify for sure he was the one that done it but he's our evidence custodian."

Melanie Carlisle, a special agent forensic scientist for the TBI Knoxville Crime Laboratory, testified that the kit in question arrived at the lab on August 13, 2010, at 4:30 p.m. She said the kit was received in the lab's "drop box," which was outside the evidence windows "securely in our building." The kit was not received in the mail. A forensic technician would have taken the kit out of the drop box. Agent Carlisle said the kit "was in a sealed condition and if there was any kind of tampering with the box itself, it would have been noted in the case file." The technician would have opened the kit and compared the information on the blood tubes to the information on the form in the kit. The technician would have assigned the same laboratory number to the form and the tubes and put the tubes in the refrigerator.

Agent Carlisle testified that she obtained the tubes from the technician on August 23, 2010. The tubes were labeled with the appellant's name, date and time of the blood draw, the initials "HH," and the appellant's date of birth. The form from the kit showed that Devin Cribley was the requesting officer, that Ernest Ray Laning was the subject, and that Heather Hall drew the blood. Agent Carlisle compared the information on the tubes to the information on the appellant's form. She said that blood tubes not opened previously had a vacuum "so you can hear a suction come out of the tube when you open the lid." Agent Carlisle tested a tube of the appellant's blood on August 24, 2010, and did not make a note in her report to indicate that the vacuum had been lost from the tube. The State asked Agent Carlisle about the test result, and the defense renewed its objection based on the lack of the chain of custody. The trial court overruled the objection, stating that "the identity and integrity of the evidence is reasonably assured." Agent Carlisle testified that the appellant's blood contained 0.22 gram percent ethyl alcohol, almost three times higher than the legal limit of 0.08 in Tennessee.

On cross-examination, the defense asked Agent Carlisle if she would have been concerned to learn that the kit reportedly was mailed to the TBI. She answered, "[O]ur chain of custody begins when we get it, the way we received it, and the day we received it and who we receive it from. . . . Anything before that, I really couldn't answer to."

Generally, Tennessee Rule of Evidence 901 governs the authentication of evidence. In order to admit physical evidence, the party offering the evidence must either introduce a witness who is able to identify the evidence or establish an unbroken chain of custody. State v. Holbrooks, 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998). "Even though each link in the chain of custody should be sufficiently established, this rule does not require that the identity of tangible evidence be proven beyond all possibility of doubt; nor should the State be required to establish facts which exclude every possibility of tampering." State v. Cannon, 254 S.W.3d 287, 296 (Tenn. 2008). However, the circumstances must establish a reasonable assurance of the identity of the evidence. State v. Kilburn, 782 S.W.2d 199, 203 (Tenn.

Crim. App. 1989). "The purpose of the chain of custody is to 'demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000) (quoting State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)). Whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's determination will not be overturned in the absence of a clearly mistaken exercise of that discretion. Holbrooks, 983 S.W.2d at 701.

The State argues that the facts of this case are "strikingly similar" to the facts in State v. Michael Joseph Arbuckle, No. M2000-02885-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 931 (Nashville, December 5, 2001). In Arbuckle, a police officer testified that he witnessed the defendant's blood being drawn, that he sealed the blood sample in a protective box, and that he put the box in the police department's evidence locker to be mailed to the TBI. Id. at *7. An agent for the TBI testified about the procedure for receiving and documenting blood samples and said any irregularities in the shipping or receiving of the defendant's blood sample would have been noted by the TBI. Id. The defendant claimed that the State failed to establish the chain of custody for the sample because the hospital employee who drew the blood and the TBI employee who received the blood did not testify.[1] Id. at *6. However, the court noted that "the failure to call all of the witnesses who handled the evidence does not necessarily preclude its admission into evidence." Id. (citing State v. Johnson, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984)). Moreover, there was no evidence of tampering, loss, or substitution of the defendant's sample. Id. at *7. Thus, this court concluded that the trial court did not abuse its discretion by admitting the evidence because "the State established the identity and integrity of the evidence through a sufficient chain of custody." Id. at *8.

Turning to the instant case, Officer Cribley testified that he witnessed the phlebotomist draw the appellant's blood, put the blood tubes in the bag, seal the bag, and put the bag into the box. Officer Cribley filled out the form in the blood kit, put the form in the box with the blood tubes, and put a self-adhesive "flap" over the box. He dated and initialed the flap on the box to indicate tampering and put the box into the locked evidence refrigerator. He said that only the evidence custodian could remove evidence from the refrigerator, and he did not know whether the kit was mailed or hand-delivered to the TBI. Agent Carlisle testified that the kit was received in the TBI's drop box. A technician would have opened the box and would have noted in the case file if someone had tampered with the box. Agent Carlisle inspected the blood tubes and the form in the box, and the labels on the blood tubes corresponded to the form containing the appellant's personal information. Agent

---

[1]Although not raised by the defendant, there also is no indication from the facts that the police department employee who mailed the sample testified.

Carlisle said that when she tested the appellant's blood, the blood tube was still vacuum-sealed, meaning it had not been opened. As in <u>Arbuckle</u>, there is no evidence of tampering or irregularities with the appellant's blood sample. Therefore, we agree with the trial court that the State established a sufficient chain of custody to reasonably assure the blood sample's identity and integrity. The trial court did not abuse its discretion by admitting the test result into evidence.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE