IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 12, 2014

**STATE OF TENNESSEE v. JOSHUA ALLEN FELTS**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2011-B-1597     Monte Watkins, Judge**

**No. M2013-01404-CCA-R3-CD - Filed June 25, 2014**

A Davidson County Criminal Court Jury convicted the appellant, Joshua Allen Felts, on count one of theft of property valued less than $500, a Class A misdemeanor; on count two of attempted theft of property valued more than $1,000 but less than $10,000, a Class E felony; on count three of attempted theft of property valued more than $500 but less than $1,000, a Class A misdemeanor; and on counts four and five of theft of property valued more than $1,000 but less than $10,000, a Class D felony. The trial court imposed a total effective sentence of twelve years in the Tennessee Department of Correction. On appeal, the appellant challenges the sufficiency of the evidence sustaining his convictions, the trial court's denial of his motion to suppress, and the State's failure to preserve the chain of custody of the stolen items. Upon review, we affirm the appellant's conviction in count five. However, the State concedes, and we agree, that the State failed to establish the value of the stolen items in the remaining counts; therefore, we remand to the trial court for amendment of the judgments of conviction in counts one and four to theft of property valued less than $500, a Class A misdemeanor, and to reflect the reduction in the sentence on each of those convictions to eleven months and twenty-nine days. Additionally, we remand to the trial court for amendment of the judgments of conviction in counts two and three to attempted theft of property valued less than $500, a Class B misdemeanor, and to reflect the reduction in the sentence on each of those convictions to six months.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed in Part, Modified in Part; Case Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Elaine Heard (at trial and on appeal) and Michael Freeman (at trial), Nashville, Tennessee, for the appellant, Joshua Allen Felts.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin E.D. Smith, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Leticia Alexander, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I.  Factual Background

A multi-count indictment was returned against the appellant, charging him with five counts of theft.  The items taken were four laptop computers and a Garmin navigational device ("Garmin").

James Collins testified at trial that one night in November 2010, he parked his Chevrolet Suburban in his driveway.  The next time he went outside, he noticed that items from the vehicle were strewn about the yard.  He looked at the vehicle and noticed damage to the key lock on the driver's side door.  He discerned that some items were missing from the vehicle, including his laptop computer, camera, leather-bound "Day Timer," pens, and loose change. Thereafter, he learned that on the same evening, someone had broken into his next-door neighbor's garage and that another house in the neighborhood had been burglarized.  Collins said that he had paid approximately $1,300 for the computer.

On cross-examination, Collins said that he had purchased the computer approximately three or four years prior to the theft.  Collins acknowledged that he would not be surprised to learn that a three- or four-year-old computer could be purchased for $700.  Collins stated that he did not know the appellant.

Williamson County Sheriff's Detective Grant Benedict testified that on January 31, 2011, he went to 3107 Gallatin Pike to serve some papers on the appellant.  Prior to the visit, Detective Benedict checked records related to the building and learned that the appellant was the leaseholder and that the electric bill for the property was in the appellant's name.  The building appeared to be a single-family residence that had been converted into a tattoo parlor. At the time Detective Benedict arrived, the business was closed. Detective Benedict knocked on the back door for some time before the appellant answered.  Inside the premises were Charlene Wittenmore, Pamela Martin, Joshua Spurling, and the appellant.

Detective Benedict said that when he walked through the back door, he saw a kitchen area to the right.  He said that the kitchen "had a lot of groceries" in it.  Further inside the house were stairs leading to a bedroom where Martin and Wittenmore were located.  Spurling's work area, an open waiting area, and the appellant's work area were on the main

floor of the building.

Detective Benedict said that as he walked through the building, he found several laptop computers, an unplugged flat screen television, a stack of DVDs, a small television, tattoo equipment, and various tools. Specifically, Detective Benedict found two laptop computers around Spurling's work area, one laptop computer upstairs, and another laptop computer in the waiting area. A Garmin was found mounted on the dashboard of the appellant's car. Detective Benedict became suspicious and began checking serial numbers on the laptop computers and on the Garmin. He learned that the items had been reported stolen; two of the computers and the Garmin were stolen in Williamson County, and two computers were stolen in Rutherford County.

On cross-examination, Detective Benedict said that the lease had been signed by the appellant and Wittenmore. The appellant's bedroom, containing a bed, dresser, and clothing, was on the second floor. The appellant and Wittenmore "were in an on again, off again relationship," and she occasionally stayed in the bedroom. He said that his "understanding" was that Martin was brought in to help run the business and also occasionally stayed in the building.

Detective Benedict said that he did not investigate Spurling's background. He explained that his "understanding" was that the appellant "was in control of that building." Spurling told Detective Benedict that some of the property, including the laptop computers, was given to him by the appellant to use in the business.

Detective Benedict said that when he found the Garmin, he turned on the device and checked the address that was listed as the home setting. The resident at that address told Detective Benedict that a Garmin was stolen from her Chevrolet Suburban at approximately 1:00 a.m. "a night earlier." The Suburban was parked in her garage. The resident had not reported the theft because she believed the loss was insignificant.

On redirect examination, Detective Benedict said that neither Spurling, Wittenmore, nor Martin were considered suspects. He explained that Wittenmore had serious health issues and, in his view, was physically unable to commit the thefts and that Martin was merely an employee of the tattoo parlor. Further, Detective Benedict noted that the appellant had grown up in Williamson County and that none of the other people in the building had any connection with Williamson County.

On recross-examination, Detective Benedict acknowledged that people from outside Williamson County frequently came into the county to commit crimes.

Detective Benedict said that he was at the tattoo parlor to serve an arrest warrant on the appellant for the burglary of a Williamson County residence.[1] The appellant became a suspect in the burglary after he, Wittenmore, and Brandon Whey attempted to use a credit card that was stolen from the residence to buy $400 worth of merchandise at a Walmart in Williamson County. Wittenmore was in possession of the card. Detective Benedict said that he did not try to arrest Wittenmore but that he got an arrest warrant for the appellant because he was a suspect in a series of car and home burglaries. Detective Benedict explained that the appellant became a suspect in the crimes after a subdivision near the Davidson County line had a rash of car and home burglaries "over nights." During patrol, the police came across the appellant in the subdivision at approximately 2:00 a.m. When the police asked the appellant why he was in the area, he responded that he was lost and trying to get to Fairview. The police gave the appellant directions to Fairview, and he left. However, he returned to the subdivision twenty minutes later. The police spoke with him again, and he said that his global positioning system ("GPS") was not working.

Detective Benedict did not know the appellant before January 31; however, he knew that the appellant had a prior conviction for burglary. In order to obtain the arrest warrant, Detective Benedict stated in the affidavit that the appellant had used the stolen credit card. He explained that he had security video reflecting that the appellant attempted to use the stolen credit card at an automatic teller machine. However, after the appellant's arrest, he learned that Wittenmore was in possession of the card; therefore, the charges against the appellant were dismissed.

Despite knowing of Wittenmore's involvement with the stolen credit card, Detective Benedict acknowledged that he focused his investigation of the stolen laptop computers on the appellant. He explained, "Everybody in that house told me that the property that [was] in there belonged to [the appellant]; it was given to them by [the appellant], or that [the appellant] was using it."

Detective Benedict said he took physical possession of the four computers that were seized from the tattoo parlor. Pursuant to police procedure, the items were photographed, and three of the computers were returned to their owners. The owner of the fourth computer could not be located. The police did not attempt to find fingerprints on the computers. One of the computers was sent to the Tennessee Bureau of Investigation ("TBI") for a forensic examination, but the other three were not. Detective Benedict did not know what the examination revealed. Detective Benedict said that he was not surprised to learn that

_____

[1]Despite the advice of defense counsel, the appellant insisted that counsel question Detective Benedict regarding his reasons for going to the appellant's property. As a result, the jury heard testimony regarding the appellant's prior convictions.

-4-

Spurling had a conviction for burglary. Nevertheless, Detective Benedict did not consider Spurling to be a suspect in the instant offenses and focused the investigation completely on the appellant.

On further redirect examination, Detective Benedict said that one of the laptop computers belonged to Collins. Detective Benedict stated that the appellant had seven convictions for aggravated burglary; however, none of the convictions related to the burglary of an automobile.

Nashville Police Department Sergeant Bryan Brown testified for the appellant. Sergeant Brown said that he arrested Spurling for theft from a motor vehicle that occurred on October 11, 2011. In that case, a window was broken, and a bag containing a laptop computer was taken.

Gidget Diane Miles testified that the appellant was her younger brother. She said that the appellant lived with her after he was released on parole in March 2009. She said that the appellant took responsibility for his actions and that he abided by the rules she imposed, such as finding employment and being home by midnight.

Miles said that the appellant found employment at Payless Tattoos. After working there for approximately one to one and one-half years, he decided to open his own tattoo parlor. He rented the property on Gallatin Road, and the business was scheduled to open in mid-February 2011. Miles knew that Spurling frequently listened to music and downloaded music onto a computer. She saw posts on Spurling's Facebook page indicating that he was selling laptop computers. Miles did not know whether the appellant had laptop computers at his tattoo parlor, but she knew that he had a desktop computer in the main reception area. Miles said that each tattoo artist was responsible for providing their own computer. Miles stated that after the appellant rented the tattoo parlor, he sometimes slept in a small room upstairs. She said, "I wouldn't say that somebody could live there because there is no refrigerator, stove, running water. There's no bathroom up there."

Miles said that after the appellant was arrested, she spoke with Detective Benedict. At the beginning of the conversation, Detective Benedict appeared to want to help the appellant. However, by the end of the conversation, Detective Benedict appeared to want to return the appellant to prison.

The appellant testified that he had worked at Payless Tattoos. He decided to start his own tattoo business and rented a building on Gallatin Road. He said that the building was not fit to live in because it had no heat; the building was to be used primarily for the business. Nevertheless, the appellant said, "[I]t's my house, it's my dwelling."

The appellant said he had not been aware that a warrant had been issued for his arrest. Therefore, when he opened the door of the tattoo parlor and saw Detective Benedict pointing a gun at him, he became frightened. The appellant was upset when he was told he was being arrested for a burglary relating to the stolen credit card because he "knew that [he] hadn't done anything wrong."

The appellant said he did not know that the laptop computers in the building were stolen and that he did not know where the police found the computers. The appellant told Detective Benedict that he knew nothing about the computers and that Detective Benedict should speak to Spurling. He said that Spurling brought his own computer when he was hired. The appellant asserted that the tattoo artists were responsible for bringing their own supplies to the tattoo parlor; the appellant supplied only the tattoo chair.

The appellant acknowledged that he had been convicted of crimes when he was younger but maintained that he was changing his life and did not commit the instant crimes. The appellant said that the State could not prove its case because it could not produce the stolen property.

The appellant said that the Garmin was purportedly found in his car. However, the car was titled in the appellant's and his mother's names because the appellant's credit was too poor to buy a car. His mother drove the car whenever she wanted. The appellant did not drive the car very often and did not know who placed the Garmin device in the car.

The appellant said that he had never stolen anything from a car. He said that he only burglarized houses and that he committed all of his crimes during the day when people were generally not at home.

On cross-examination, the appellant acknowledged that he had at least thirty convictions for theft. He stated that Detective Benedict could have searched his home without a warrant because the appellant was a parolee. He claimed that Detective Benedict "took property that he said that he found out of my house, and never logged it into evidence, never put fingerprints on it. . . . That right there, to me, is unjust. You know, there is a fourth amendment right that says, unreasonable search and seizures. . . . [T]hat was unreasonable."

The jury convicted the appellant of the following:

| Count | Item | Offense | Victim | Class of Offense |
|-------|------|---------|--------|------------------|
| 1 | Garmin | theft valued less than | Robert Johnson | Class A misdemeanor |

| | | $500 | | |
|---|---|---|---|---|
| 2 | laptop computer | attempted theft valued more than $1,000 but less than $10,000 | Bryan Bath | Class E felony |
| 3 | laptop computer | attempted theft valued more than $500 but less than $1,000 | Joseph Yadon | Class A misdemeanor |
| 4 | laptop computer | theft valued more than $1,000 but less than $10,000 | Michael Galtie | Class D felony |
| 5 | laptop computer | theft valued more than $1,000 but less than $10,000 | James Collins | Class D felony |

The court sentenced the appellant to eleven months and twenty-nine days for each conviction on counts one and three, to six years for the conviction on count two, and to twelve years for each conviction on counts four and five. The court ordered the sentences to be served concurrently, for a total effective sentence of twelve years. As a career offender, the appellant was ordered to serve sixty percent of the sentence in confinement before becoming eligible for release.

On appeal, the appellant challenges the sufficiency of the evidence sustaining his convictions, the trial court's dismissal of his motion to suppress, and the State's failure to preserve the chain of custody of the stolen items.

## II.  Analysis

### A.  Motion to Suppress

The appellant contends that the trial court erred by denying his pretrial motion to suppress evidence regarding the computers based on the State's failure to preserve the evidence. The record reflects that prior to trial, the appellant filed a motion to suppress the stolen items, alleging that the State could not establish the chain of custody of the evidence. Defense counsel contended that although the laptop computers, which were the majority of the stolen items, were found in a tattoo parlor owned by the appellant, they were found in areas "that were accessible, and almost exclusively, inhabited by other people," namely Joshua Spurling. Defense counsel said that "almost as soon as" the State recovered the

-7-

laptop computers, they were returned to the people who had reported them stolen. Defense counsel complained that the defense was never given access to the computers and was therefore unable to have the computers tested or fingerprinted. Defense counsel alleged that testing could have revealed the appellant never touched the computers. Further, defense counsel asserted that State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), required the State to preserve the evidence.

The State argued that the issues raised by the appellant were factual questions for the jury to determine, not for the court to determine in a motion to suppress. The State maintained that the appellant was the leaseholder of the location where the computers were found. The State said that in February 2012, Detective Benedict allowed defense counsel access to two laptop computers that had not been returned to the victims. The State maintained that it was not required to retain the stolen items until the case was concluded.

Defense counsel responded that Ferguson obligated the State to preserve evidence with potential exculpatory value. Defense counsel said, "Had we been allowed to take possession of them before they had gone back to the people that originally owned them, that they were originally assigned to by their employers[,] we feel like we could have shown that [the appellant] was not guilty of the charges that he's facing today."

The court denied the motion to suppress, finding "that these are, really, factual issues for the jury to make that determination." On appeal, the appellant challenges the trial court's ruling.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution afford every criminal defendant the right to a fair trial. See Johnson v. State, 38 S.W.3d 52, 55 (Tenn. 2001). As such, the State has a constitutional duty to furnish a defendant with exculpatory evidence pertaining to the defendant's guilt or innocence or to the potential punishment faced by a defendant. See Brady v. Maryland, 373 U.S. 83, 87 (1963).

In Ferguson, our supreme court addressed the issue of when a defendant is entitled to relief in the event the State has lost or destroyed evidence that was alleged to have been exculpatory. Once the proof demonstrates the existence of a duty to preserve the evidence and further shows that the State has failed in that duty, a court must proceed with a balancing analysis involving consideration of the following factors:

> 1. The degree of negligence involved;
>
> 2. The significance of the destroyed evidence, considered in

light of the probative value and reliability of secondary or substitute evidence that remains available; and

3. The sufficiency of the other evidence used at trial to support the conviction.

Id. at 917 (footnote omitted). If the court's consideration of these factors reveals that a trial without the missing evidence would lack fundamental fairness, the court may consider several options such as dismissing the charges or providing an appropriate jury instruction. Id. We will review a trial court's decision concerning the fundamental fairness of the trial under a de novo standard. State v. Merriman, 410 S.W.3d 779, 790 (Tenn. 2013). In the event we determine the trial would be fundamentally unfair in the absence of the lost evidence, we will review the remedy applied by the trial court under an abuse of discretion standard. Id.

Initially, we note that during the suppression hearing, the State maintained that

We had this case set for a bench trial in February of last year. At that point in time, Detective Benedict provided [defense counsel] with the items that he had left, that were not given back to the victims; and, that was two computers, to process in any way, shape, or form that [defense counsel] would like to do. That never happened, for whatever reason.

Defense counsel did not dispute that he had access to two of the computers. Accordingly, there is no potential Ferguson issue with regard to those two computers.

Turning to the other two computers, we note that the State's duty to preserve evidence turns first upon whether the defendant would be entitled to receive the evidence in discovery. Ferguson, 2 S.W.3d at 917. Tennessee Rule of Criminal Procedure 16 permits a defendant to inspect tangible objects within the State's possession that are material to the preparation of the defense, that the State intends to use in its case-in-chief, or that were taken from or belong to the defendant. Tenn. R. Crim. P. 16(a)(1)(F). Because the computers were the stolen items at issue in the instant case, the appellant was entitled to inspect the items.

However, the State's duty to preserve evidence also turns upon the materiality of that evidence and the availability of comparable evidence. Ferguson, 2 S.W.3d at 917. Our supreme court has explained that evidence is constitutionally material if it both possessed apparent exculpatory value before its loss or destruction and is of a type that other comparable evidence is not reasonably available to the defendant. Id. Defense counsel

argued that fingerprint analysis, DNA testing for skin cells, and examination of the data on the computers could be exculpatory because it might show that the appellant had not touched the items and that other people had touched the items. Specifically, the appellant contended that analysis of the computers "could have shown that if any [tattoo] designs were on there, . . . those designs would have belonged to Joshua Spurling, not [the appellant]." However, according to Detective Benedict, the other people in the tattoo parlor stated that the appellant owned the computers, that the appellant gave them the computers to use, and that they used them. Although comparable evidence may not have been available, we conclude that proof of another person's fingerprints and/or the lack of the appellant's fingerprints on the computers would not necessarily be exculpatory. Accordingly, we conclude that the State did not breach its duty to preserve the evidence.

Regardless, even if the State had an obligation to preserve the evidence, Ferguson affords the appellant no relief. Concerning the first factor, which addresses the degree of negligence involved, Ferguson generally "presumes negligence in the loss or destruction of the evidence." 2 S.W.3d at 917 n. 10. The record contains no proof that the State acted in bad faith; therefore, it appears that the State's actions were simple negligence. Id. at 918.

The second factor is the significance of the destroyed evidence in light of its probative value and the reliability of any secondary or substitute evidence. Id. at 917. Probative value "requires that evidence assists in proving what it is offered to prove." Neil P. Cohen et al. Tennessee Law of Evidence § 4.01[3] (LEXIS publishing, 6th ed. 2011). The appellant contends that fingerprints could possibly have been taken from the hard surfaces of the computers, revealing that his fingerprints were not on the computers. Additionally, he contends that the data memories and histories of the computers might have revealed who had actually used the computers. As we stated earlier, the employees of the tattoo parlor said that the computers belonged to the appellant and that he provided the computers for their use. Accordingly, even if the appellant's fingerprints and/or data were not on the computer, it would not necessarily be exculpatory, thereby minimizing its probative value. Moreover, the appellant cross-examined Detective Benedict about the State's failure to thoroughly perform fingerprinting or forensic testing on the computers,[2] calling into question the completeness of the State's investigation of the case.

Finally, we will consider the sufficiency of the other evidence used at trial to support the conviction. Detective Benedict testified without objection that the employees of the

---

[2]Detective Benedict testified that one of the computers was sent to the Tennessee Bureau of Investigation crime laboratory for a forensic examination; however, no evidence was introduced regarding the results of the examination.

tattoo parlor told him that the computers belonged to the appellant. All of the computers were found in the residence leased by the appellant; one was found in the appellant's bedroom and one in a common area. Additionally, Detective Benedict testified that Wittenmore's health issues made it "improbable" that she could have stolen the computers and that Martin was "just an employee." Moreover, Detective Benedict testified that the appellant had the strongest ties to Williamson County, where the bulk of the thefts were committed. Based upon the foregoing, we conclude that the appellant was not entitled to relief under Ferguson.

## B. Chain of Custody

The appellant argues that the State failed to properly preserve the chain of custody for the computers and the Garmin. The appellant contends:

> In this case the circumstances surrounding the introduction of the evidence did not reasonably establish its integrity. The only witness to testify that there was a theft at all was Mr. Collins. But Mr. Collins property was only the subject of count 5 of the indictment. All remaining counts were testified to only by Detective Benedict, who failed in every respect to provide a description, a value, or a nexus between the Appellant and the property other than it was located in a structure to which the Appellant had access along with multiple others.

The State contends that because the computers were not entered into evidence, the prosecution did not need to establish an unbroken chain of custody. We agree with the State.

Generally, Tennessee Rule of Evidence 901 governs the authentication of evidence. In order to admit physical evidence, the party offering the evidence must either introduce a witness who is able to identify the evidence or establish an unbroken chain of custody. State v. Holbrooks, 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998). "The purpose of the chain of custody is to 'demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000) (quoting State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)).

In the instant case, the stolen items were not introduced as evidence at trial. Therefore, there was no need to establish a chain of custody for authentication. State v. Jeremy McMillon, No. E2010-01091-CCA-R3-CD, 2011 WL 4424732, at *8 (Tenn. Crim. App. at Knoxville, Sept. 22, 2011).

Regardless, although the appellant framed his issue as a challenge to the chain of custody, the heart of his complaint is the sufficiency of the evidence, which we will address *infra*.

## C. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Moreover, the State is under no "'affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt.'" Id. at 380 (quoting Jackson, 443 U.S. at 326).

A theft of property occurs when someone, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103. The appellant complains that Collins was the only owner of stolen property who testified at trial, that the State failed to prove that the property was stolen or that the appellant was the person who stole the property, and that the State failed to establish the value of the property. The appellant's primary argument is that Spurling was the person who stole the property. The State contends that it sufficiently proved that the appellant stole the property. Further, the State contends that Collins' testimony that he paid $1,300 for his computer was sufficient to establish the value; however, the State concedes that the value of the remaining stolen items was not established at trial.

The proof at trial established that the laptop computers were found inside a building leased by the appellant, that the employees told Detective Benedict that the appellant gave them the laptop computers to use in the business, that one of the laptop computers was found in the appellant's bedroom and one in a common area, and that the Garmin was found in the appellant's car. This court has previously stated that "[p]ossession of recently stolen goods gives rise to an inference that the possessor has stolen them." State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995) (citing Bush v. State, 541 S.W.2d 391, 394 (Tenn. 1976)); see also State v. James Ray Walker, No. W2012-01593-CCA-R3-CD, 2013 WL 3968804, at *4 (Tenn. Crim. App. at Jackson, Aug. 1, 2013).

Further, Detective Benedict testified without objection that the four computers and the Garmin were reported stolen. Additionally, Detective Benedict testified that Spurling told him that "some of that property that was in there was given to [Spurling] to use as operating his business, and among those things were the laptops that he said he was provided by [the appellant]." Detective Benedict also testified, "Everybody in that house told me that the property that [was] in there belonged to [the appellant]; it was given to them by [the appellant], or that [the appellant] was using it." Although the testimony consisted of hearsay, the defense did not object; therefore, the jury could consider the testimony as substantive evidence. See State v. Smith, 24 S.W.3d 274, 280 (Tenn. 2000) (citing State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981); State v. Bennett, 549 S.W.2d 949, 950 (Tenn. 1977)). We conclude that the State sufficiently established the appellant's identity as the person who stole the items.

Finally, regarding the value of the stolen items, we note that Collins testified that approximately three or four years prior to the theft, he bought the laptop computer at issue in Count 5 for approximately $1,300. Our criminal code defines value as

> (i) The fair market value of the property or service at the time and place of the offense; or

> (ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense.

Tenn. Code Ann. §39-11-106(36)(A)(i)-(ii). Generally, "[a] witness may testify to the value of the witness's own property or services." Tenn. R. Evid. 701(b). It is the jury's prerogative to determine the fair market value of the items stolen. State v. Hamm, 611 S.W.2d 826, 828-29 (Tenn. 1981); State v. Michael Webster, No. M2012-00713-CCA-R3-CD, 2013 WL 2457181, at *6 (Tenn. Crim. App. at Nashville, June 5, 2013); State v. Alton Tappan, No. W2006-00168-CCA-R3-CD, 2007 WL 1556657, at *5 (Tenn. Crim. App. at Jackson, May

29, 2007). Moreover, the jury was instructed on how to determine the fair market value of the item(s) stolen. See State v. Rodger Watts, No. W2010-00705-CCA-R3-CD, 2011 WL 1220766, at *3 (Tenn. Crim. App. at Jackson, Mar. 31, 2011). Viewing the evidence in the light most favorable to the State, we conclude that a jury could reasonably have determined that the fair market value of the laptop at the time of the theft was more than $1,000 but less than $10,000, a Class D felony. See State v. Steven Bernard Sydnor, No. M2007-02393-CCA-R3-CD, 2010 WL 366670, at *20 (Tenn. Crim. App. at Nashville, Feb. 2, 2010).

The State concedes that it produced insufficient evidence at trial to establish the value of the remaining laptop computers and the Garmin. We agree. Our code provides that "[i]f property or service has value that cannot be ascertained by the criteria set forth in subdivisions (a)(36)(A) and (B), the property or service is deemed to have a value of less than fifty dollars ($50.00)." Tenn. Code Ann. § 39-11-106(36)(C). Accordingly, we must modify the appellant's convictions in Counts 1 and 4 to theft of property valued less than $500, a Class A misdemeanor. We must also modify the appellant's convictions in Counts 2 and 3 to attempted theft of property valued less than $500, a Class B misdemeanor. See State v. Walter Dan McFarland, Sr., No. 01C01-9406-CR-00199, 1995 WL 301447, at *3 (Tenn. Crim. App. at Nashville, May 18, 1995).

### III. Conclusion

Based upon the foregoing, we affirm the appellant's conviction in count five of theft of property valued more than $1,000 but less than $10,000 and the accompanying twelve-year sentence. However, due to the State's failure to prove the value of the items on the remaining counts, we remand to the trial court for amendment of the judgments of conviction in Counts 1 and 4 to theft of property valued less than $500, a Class A misdemeanor, and to reflect the reduction in the sentence on each of those convictions to eleven months and twenty-nine days. Additionally, we remand to the trial court for amendment of the judgments of conviction in Counts 2 and 3 to attempted theft of property valued less than $500, a Class B misdemeanor, and to reflect the reduction in the sentence on each of those convictions to six months. The sentences will be served concurrently for a total effective sentence of twelve years.

_____
NORMA McGEE OGLE, JUDGE

-14-