IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 10, 2016


**STATE OF TENNESSEE v. CARMELO GONZALEZ-FONESCA**


**Appeal from the Criminal Court for Davidson County**
**No. 2014-A-144     J. Randall Wyatt, Jr., Judge**

_____


**No. M2015-01322-CCA-R3-CD – Filed July 21, 2016**

_____


This is Defendant's, Carmelo Gonzalez-Fonesca's, direct appeal from his convictions by a jury of one count of possession of 150 grams or more of heroin with the intent to sell or distribute and one count of possession of drug paraphernalia with the intent to prepare and package a controlled substance. As a result, he was sentenced to an effective sentence of fifteen years in incarceration as a Range I, standard offender. Defendant appeals, challenging the sufficiency of the evidence, the expert testimony of Sergeant Gene Donegan, and the chain of custody with respect to the evidence. After a review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

David Harris (on appeal) and M. Oliver Osemwegie (at trial), Nashville, Tennessee, for the appellant, Carmelo Gonzalez-Fonesca.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Amy Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

*Factual Background*

On October 11, 2013, officers from the Metro Nashville Police Department were called to the UPS terminal to inspect a suspicious package. The package was addressed to Sandra Hernandez in Nashville, Tennessee. It was sent next-day air from California. The address to which the package was addressed is a duplex but the package did not specify a unit. Upon investigation, police were unable to find a driver's license, utility bills, or a criminal history related to the name on the package.

Detective Daryl Howard of the Metro Nashville Police Department took the package from the UPS terminal to the police station. Once at the police station, officers set out five packages in a row, one of which contained the suspicious package addressed to Sandra Hernandez. A police canine alerted on the suspicious package, prompting officers to secure a search warrant for the package based upon the tracking numbers and the belief that it contained narcotics. After obtaining the search warrant, the police opened the package to discover 1200 grams of black tar heroin. The heroin was covered in mustard to disguise the scent.

The Metro Police Officers set up delivery of the package to its destination. Detective Adam Read acted as a UPS delivery man in a brown van outfitted with UPS stickers. Detective Howard and other officers waited in the back of the van, monitoring the situation with radio communication.

As the van pulled up to the address indicated on the package, Defendant and Codefendant Arturo Zamudio were sitting on the front porch of the adjacent residence. Detective Read exited the van and approached the duplex, pausing in front of the building when he saw Defendant "running" toward him. Detective asked Defendant if it was his house, and Defendant seemed to respond affirmatively by pulling keys out of his pocket as if he were going to open the door. Detective Read asked Defendant "something to the affect that is this your residence" and "are you [the name on the package]," and Defendant "shook his head yes" and "said yes." Detective Read thought that Defendant understood what he was saying because Defendant followed the detective to the van. Detective Read got the package out of the van and handed it to Defendant. Defendant "accepted the package [and] placed it between his legs as if he understood that I had something for him to sign." At that point, Detective Read gave the takedown signal, and Defendant was arrested. Defendant had $1594 in his pocket in small bills at the time of his arrest.

Codefendant Zamudio saw the officers and fled into the residence. Officer John Wright was in position at the rear of the duplex and observed Codefendant Zamudio step outside the residence and toss a larger plastic bag and five smaller plastic bags containing

heroin into the yard. Codefendant Zamudio was apprehended inside the residence and arrested. A third codefendant, Luis Ibarra-Zamora, was present inside the residence and was also arrested.

Officers secured a search warrant for the residence where codefendant Zamudio was apprehended and codefendant Zamora was located. Detective Howard noted that the residence had a strong smell of vinegar, which in his experience indicated the presence of black tar heroin. Upon searching the residence, officers found it to be essentially empty, consistent with a typical "stash house" where drugs were processed. There was a card table in the dining room. On the card table, the officers found a large quantity of rubber balloons for packaging heroin, a white spoon covered in black tar, black tape, sandwich baggies, and digital scales. In the refrigerator, officers recovered 25 grams of heroin. The search also uncovered $15,000 in small bills stacked in a kitchen drawer. In the upstairs portion of the residence, officers located a ledger book, commonly used to document drug sales. Outside the residence, officers located brown powder weighing sixteen grams and five bundles of plastic bags containing black tar heroin with an aggregate weight of five grams. During the search of the residence, Detective Howard personally received all of the evidence in a single bag which he ultimately delivered to the property room.

LouAnne Corcoran, of the Metropolitan Nashville Police Crime Laboratory, worked as the Tennessee Bureau of Investigation ("TBI") Laboratory Submissions Clerk. She submitted the evidence to the TBI. It was received at the TBI by Erica Miller, a forensic technician, but was ultimately tested by Special Agent Forensic Scientist Ella Carpenter of the TBI. Special Agent Carpenter determined that one package contained heroin and weighed 271.92 grams, one package contained heroin and weighed 233.68 grams, one package contained heroin and weighed 25.12 grams, and four additional bundles contained a similar substance but were not weighed or tested because the 150 gram threshold was already reached. The untested materials were consistent with the tested materials in appearance. They weighed 685.05 grams.

Defendant, Codefendant Zamudio, and Codefendant Ibarra-Zamora were indicted in January of 2014 by the Davidson County Grand Jury for possession of 150 grams or more of heroin with the intent to sell or deliver and possession of drug paraphernalia with the intent to prepare and package a controlled substance. At a joint trial, the State's proof consisted of the facts presented above in addition to the testimony of Sergeant Gene Donegan. Sergeant Donegan testified as an expert in narcotics investigation that he had worked in narcotics enforcement since 1988, was a certified narcotics instructor, and had participated in thousands of drug trafficking investigations over the course of his career. He explained that the house in this case was a typical stash house, set up to facilitate the movement of drugs throughout the community. He explained that Mexican cartels

ordinarily sent two or three individuals to run a drug operation in the United States. The delivery of a package addressed to a person who did not exist was consistent with the general method of heroin trafficking—it frustrated the tracking of the package if it was intercepted by authorities. Sergeant Donegan explained that the majority of the sales did not occur near the stash house as heroin dealers ordinarily met their buyers in public spaces. Sergeant Donegan confirmed that in Nashville, black tar heroin was ordinarily packaged in balloons consistent with the balloons found at the residence, some of which contained heroin. He estimated that the value of the heroin was approximately $200,000 and that it would supply approximately 1000 users for one week. Sergeant Donegan also explained that the $15,000 found in the house was typical of a heroin dealing operation, with a typical income of $4000-$6000 per day.

Defendant and his codefendants did not present any proof. The jury convicted Defendant as charged in the indictment.[1] After a sentencing hearing, the trial court imposed an effective sentence of fifteen years in incarceration and set Defendant's fine at $500,000.00.

Subsequently, Defendant filed a motion for new trial in which he challenged the sufficiency of the evidence, the chain of custody of the evidence, Sergeant Donegan's qualification as an expert at trial, and his sentence. After the hearing, the trial court reduced the fine from $500,000 to the mandatory minimum amount of $2000. The trial court denied all other requests for relief. Defendant filed a timely notice of appeal.

*Analysis*
*I. Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence. Specifically, Defendant complains that the State failed to prove that he "knowingly" possessed the heroin with the intent to sell or deliver. He argues the "record is replete with references to circumstances indicating that [Defendant] did not have the state of mind necessary to convict him for the offense." To support his argument, Defendant points to the following proof: (1) the addressee of the package was not Defendant; (2) Defendant approached the UPS driver from the next door address; (3) Defendant only communicated nonverbally with the UPS driver; and (4) Defendant does not speak English. The State insists that ample evidence was presented to support the convictions.

---

[1] Codefendant Ibarra-Zamora was convicted of facilitation of possession of heroin with the intent to sell or deliver in Count One and not guilty in Count Two. Codefendant Zamudio was convicted as charged in the indictment. Neither codefendant is a party to this appeal.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Reid*, 91 S.W.3d at 277. Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

"It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell such controlled substance." T.C.A. § 39-17-417(a)(4). Heroin is a Schedule I controlled substance. *See id.* § 39-17-406(c)(11). A person acts knowingly "with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b).

The proof at trial, viewed in a light most favorable to the State, established that a package containing heroin was addressed to a fictitious person, Sandra Hernandez. Sergeant Donegan testified that heroin traffickers commonly addressed packages to false names in order to prevent the authorities from tracking the packages. Detective Read, posing as a UPS driver, approached the residence on the package when Defendant ran toward him from the porch on the other side of the duplex. The detective asked Defendant if it was his house and Defendant responded affirmatively and pulled keys out of his pocket as if he were going to open the door. Detective Read read the name on the package and Defendant again responded affirmatively. Detective Read opined that Defendant understood his questions. Defendant followed Detective Read to the truck to

retrieve the package. When Defendant received the package, he placed it in between his legs and reached for the clipboard to sign for the package. The takedown signal was given by Detective Read, and Defendant was arrested. Defendant had $1594 in small bills in his pocket. The subsequent search of the residence revealed the presence of heroin packaged for resale, supplies to package heroin for resale, an additional quantity of heroin, a ledger book, and $15,000 in cash.

In this case, the jury obviously accredited the testimony of the officers. The jury is left to determine the mental state of the defendant by drawing inferences from the surrounding circumstances. *See, e.g.*, *Poag v. State*, 567 S.W.2d 775, 778 (Tenn. Crim. App. 1978). Additionally, under Tennessee Code Annotated section 39-17-419, the jury may infer "from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." The statutory definition of "deliver" includes "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." T.C.A. § 39-17-402(6); *see State v. Anthony Brown*, No. W2010-01764-CCA-R3-CD, 2012 WL 1154284, at *3 (Tenn. Crim. App. Mar. 30, 2012), *perm. app. denied* (Tenn. Aug. 16, 2012). There was ample evidence from which the jury could determine that Defendant knowingly possessed the heroin with the intent to sell or distribute.[2] Defendant is not entitled to relief on this issue.

## II. Expert Witness

Defendant complains that the trial court failed to find that the expert testimony of Sergeant Donegan would "substantially assist the trier of fact to understand the evidence or to determine a fact in issue" as required by Tennessee Rule of Evidence 702. Defendant argues that "whether there was a trafficking operation is not necessarily instructive to whether [Defendant] knowingly possessed that package with the intent to sell or deliver its contents." Defendant does not challenge Sergeant Donegan's qualification as an expert witness in the area of drug trafficking, merely how his testimony assisted the jury in making the determination of guilt.

Questions regarding the qualifications, admissibility, relevancy, and competency of expert testimony are matters left within the broad discretion of the trial court. *See McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263-64 (Tenn. 1997); *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993). On appellate review, the trial court's ruling shall not be overturned absent a finding that the trial court abused its discretion in admitting or

---

[2] Defendant does not challenge the conviction for possession of drug paraphernalia to prepare and package a controlled substance on appeal.

excluding the expert testimony. *Ballard*, 855 S.W.2d at 562. "[A]n appellate court should find an abuse of discretion when it appears that the trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

Rule 702 of the Tennessee Rules of Evidence addresses the admissibility of opinion testimony of expert witnesses. It states:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Additionally, an expert witness's testimony must be relevant to the issues at trial. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

Defendant contends that the witness's testimony was not helpful to the determination of the ultimate issue of whether Defendant knowingly possessed the package of heroin with the intent to sell or deliver. We disagree. This Court has previously held that "[w]hen the State establishes that an officer possesses the necessary training, experience, and familiarity with the illicit drug trade, the officer may testify about matters relating to the business of buying, selling, trading, and use of illegal drugs pursuant to Rule 702 of the Tennessee Rules of Evidence." *State v. Elliot*, 366 S.W.3d 139, 147 (Tenn. Crim. App. 2010); *see also State v. Telly Lamont Booker*, No. E2011-01915-CCA-R3-CD, 2013 WL 1342491, at *4-5 (Tenn. Crim. App. Apr. 3, 2013), *perm. app. denied* (Tenn. June 12, 2013); *State v. Gayle Thomas Crawford*, No. W2009-00263-CCA-R3-CD, 2009 WL 3233519, at *6-7 (Tenn. Crim. App. Oct. 7, 2009), *perm. app. denied* (Tenn. Apr. 23, 2010); *State v. Daniel Potin*, W2005-01100-CCA-R3-CD, 2006 WL 1548672, at *4 (Tenn. Crim .App. June 7, 2006), *perm. app. denied* (Tenn. Nov. 13, 2006); *State v. Samuel L. Giddens*, No. M2002-00163-CCA-R3-CD, 2004 WL 2636715, at *2 (Tenn. Crim. App. Nov. 15, 2004); *State v. Timothy Murrell*, No. W2001-02279-CCA-R3-CD, 2003 WL 21644591, at *5-7 (Tenn. Crim. App. July 2, 2003). To obtain a conviction in this case, the State was required to prove that Defendant knowingly possessed the heroin for sale or delivery, an issue addressed directly by Sergeant Donegan's testimony. *See* Tenn. R. Evid. 401. Sergeant Donegan's testimony regarding the heroin trade certainly informed the jury's determination of whether Defendant possessed the heroin for sale or delivery. In consequence, the trial court did not abuse its discretion by admitting the testimony. Defendant is not entitled to relief on this issue.

### III. Chain of Custody

Next, Defendant challenges the chain of custody of the physical evidence used to convict him. Specifically, Defendant points to the faulty evidence collection technique employed by Detective Chad Young during the search of the residence. The State disagrees.

We review challenges to the chain of custody of evidence under the abuse of discretion standard. *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Beech*, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987). Under this standard, we will not reverse unless the trial court "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting *Shuck*, 953 S.W.2d at 669).

Tennessee Rule of Evidence 901(a) provides: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." As we have previously recognized, it is "'well-established that as a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody.'" *Scott*, 33 S.W.3d at 760 (quoting *State v. Holbrooks*, 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998)). This evidentiary rule is designed to insure "'that there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" *Id.* (quoting *State v. Braden*, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)).

Even though each link in the chain of custody should be sufficiently established, this rule does not require that the identity of tangible evidence be proven beyond all possibility of doubt; nor should the State be required to establish facts which exclude every possibility of tampering. *Scott*, 33 S.W.3d at 760. The State is not required to call every single person who handled the item prior to its admission as evidence. *See State v. Johnson*, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984). "Accordingly, when the facts and circumstances that surround tangible evidence reasonably establish the identity and integrity of the evidence, the trial court should admit the item into evidence." *State v. Cannon*, 254 S.W.3d 287, 296 (Tenn. 2008). However, if the State does not offer sufficient proof of the chain of custody, the "evidence should not be admitted . . . unless both identity and integrity can be demonstrated by other appropriate means." *Scott*, 33 S.W.3d at 760 (quoting *Neil P. Cohen et. al.*, Tennessee Law of Evidence § 901.12, at 624 (3d ed. 1995)).

Defendant insists that the chain of custody was not properly established with regard to the items seized in the search of the residence because multiple police officers

searched the residence and turned everything over to Detective Young who, in turn, bagged and maintained the inventory of the items. Defendant argues that each officer should have personally signed each bagged item before it was entered on the log by Detective Young. At trial, Detective Howard testified that he personally looked at each item of evidence before it was bagged and processed by Detective Young. Detective Howard maintained an inventory of the evidence as it was collected. Detective Howard personally packaged and delivered all the evidence to the evidence room. LouAnne Corcoran testified that she received the evidence and ultimately submitted it to the TBI. At the TBI, the evidence was received by Ms. Miller and tested by Special Agent Carpenter. The testimony provided by the State was more than enough to "reasonably establish the identity and integrity of the evidence." *Cannon*, 254 S.W.3d at 296. Defendant is not entitled to relief on this issue.

*III.*

*Conclusion*
For the foregoing reasons, the judgments of the trial court are affirmed.


_____
TIMOTHY L. EASTER, JUDGE