IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 4, 2018 Session

## STATE OF TENNESSEE v. MARQUEL STEWART

**Appeal from the Criminal Court for Shelby County**
No. 14-01173        Lee V. Coffee, Judge

_____

### No. W2017-00299-CCA-R3-CD
_____

The Defendant, Marquel Stewart, was convicted by a Shelby County jury of aggravated robbery, see T.C.A. § 39-13-402, for which he received a sentence of eight years. In this appeal, he argues that the trial court erred in (1) conditioning his motion to continue the trial upon revocation of his bond, (2) admitting a shirt and bandana into evidence without proper authentication or chain of custody, and (3) admitting the Defendant's jail phone calls into evidence. Upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

M. Hayden Lawyer, Memphis, Tennessee, for the Defendant, Marquel Stewart.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Stephen Ragland, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The instant offense occurred on August 11, 2013, as Kyle Foster, the victim, was withdrawing money from an automated teller machine (ATM). At that time, the Defendant robbed the victim at gunpoint and attempted to escape in the victim's car. The Defendant could not start the car, ran behind a nearby building, and then into a forest across the street. The police were called, and, following a K-9 search, the Defendant was apprehended and identified by the victim and an eyewitness. Significantly, the victim noted that the Defendant was wearing a white shirt, sunglasses, and a red bandana over his face during the robbery, and the eyewitness saw the Defendant run into the forest with

white and red clothing in his hands. These items were recovered by a responding officer near the location where the Defendant was hiding.

**Trial**. Kyle Foster, the victim, testified in large part consistently with the above facts. He added that his assailant, whom he identified at trial as the Defendant, was wearing a white t-shirt, sunglasses, and red bandana over his mouth at the time of the offense. The Defendant took $40 and the victim's wallet, which contained his driver's license and social security card. The victim stated that another person, later identified as Derwin Gray, drove up to the ATM and saw the Defendant run behind Crystal Palace. The victim then called 911, the recording of which was admitted into evidence and played for the jury. On cross-examination, the victim confirmed that the Defendant was not wearing the white shirt, sunglasses, or red bandana when he identified him to police. On redirect, the victim explained that he was able to identify the Defendant by his haircut, the shape of his head, and his body type.

Derwin Gray, the eyewitness to part of the offense, testified consistently with the above facts. In addition, Gray saw the Defendant wearing shorts and carrying "some red and white" clothing as he ran behind Crystal Palace. Shortly thereafter, he again saw the Defendant with no shirt on, holding red and white clothes. The Defendant ran from behind Crystal Palace, made eye contact with Gray, and ran toward the forest. After the Defendant was apprehended by police officers, Gray identified the Defendant as the same man he saw fleeing the scene. On cross-examination, Gray testified that he never saw the Defendant with a gun or sunglasses. Gray did not attempt to follow the Defendant but confirmed that he told police he "drove off to see where [the Defendant] went." On redirect, Gray explained that, as he was leaving, he glanced over in the direction that the Defendant fled but did not attempt to chase him.

Memphis Police Officer Jacques Pope responded to the instant offense. Upon his arrival, a perimeter was set up around the forest and a K-9 unit was called in to search for the Defendant. The K-9 unit located the Defendant wearing jeans with no shirt. The Defendant was returned to the scene and the victim positively identified the Defendant as the perpetrator of the offense. On cross-examination, Officer Pope testified that the description of the suspect identified "a male Black wearing dark colored jeans, a white shirt, and [] a red bandana over his face."

Former Memphis Police Officer Maverick Rasmussen responded to the instant offense and retrieved a white shirt and red cloth from the area near where the Defendant was apprehended. Officer Rasmussen identified exhibit 3 as the evidence he retrieved and noted his initials and officer identification number on the evidence bag. He explained that he retrieved this evidence because it matched the physical description of the Defendant and because the Defendant was shirtless when he was brought out of the

forest. On cross-examination, Officer Rasmussen testified that he did not consider the red cloth to be a bandana. On redirect, he identified an envelope with his initials and property labels on it which contained a property sheet and currency that was also retrieved at the scene: specifically, one twenty-dollar bill and one single-dollar bill. On recross, he confirmed that he processed the currency evidence during the same investigation that he processed the white shirt and red cloth.

Investigator Ruben Ramirez of the Shelby County Sheriff's Department monitored recorded inmate phone calls for investigative purposes. He explained that each call is prompted with an advisement that the call is subject to monitoring and recording, and there are signs posted in the jail advising the same. Investigator Ramirez created a compact disc (CD), admitted into evidence as exhibit 7, upon which he downloaded several of the Defendant's jail calls. Investigator Ramirez noted his handwriting, name, initials, and employee number on the CD. The Defendant objected to the admission of the CD, and the trial conducted a hearing outside the presence of the jury. After argument of the parties, the trial court overruled the Defendant's objection. The jury returned to the courtroom and the State then played exhibit 7 for the jury. In the first call, the Defendant told his mother that he "messed up" and asked whether his ex-girlfriend had gotten the truck he left at Crystal Palace, stating that he left the keys under the floormat. In the second call, the Defendant told his mom that he was in jail for the aggravated robbery at the Crystal Palace parking lot and told his ex-girlfriend that he messed up and "didn't know what [he] was thinking."

**Defense Proof.** The Defendant testified that, on the evening of August 11, 2013, he drove to and parked at Crystal Palace to go for a run in the area. He indicated his route on an aerial map and stated that when he was returning to his truck, he saw someone pointing at him. He explained that he was a witness to a crime on June 24, 2013, and that the man pointing at him looked like one of the suspects in that case. He was scared that the man pointing at him might have been connected to the prior crime, and he fled out of fear. He ran behind Crystal Palace, crossed the street, and ran into the forest. He said he saw the police and K-9 unit enter the forest and that he laid down on the ground until the police found him. He told the police he did not have a gun "at least ten times," that the officer kicked him in the face and chest, and that the K-9 bit him multiple times. He eventually told the police that he "gave the gun to someone just because [he] feared for [his] life." He testified that he did not actually have a gun and lied to the police because he was scared. He stated that when he was arrested, he only had his white shirt and twenty-one dollars on his person. He testified that he did not rob the victim and did not have his wallet or identification. He said he did not recall anyone trying to identify him after he was arrested.

- 3 -

The Defendant explained that he was scared and "knew then [he] had messed up by telling [the police] that [he] had a gun when [he] didn't have a gun." He testified that he was brought down to the police station and placed in an interrogation room at which point he attempted to commit suicide by tying his shoelace to the table and around his neck. Several officers found the Defendant before he lost consciousness and escorted him to the hospital to be assessed by a psychological doctor. He was then returned to jail and confirmed making the two jail phones calls included in exhibit 7. He testified that he said, "I messed up" because he lied to the police about having a gun. He confirmed that his mother asked if he hurt anyone and he responded that he did not. He stated that the second person on the call was his ex-girlfriend, that he had gone to see another woman that day, and that is why he told her he "messed up." He said his statement, "I don't know what I was thinking" referred to him seeing another woman that was not his ex-girlfriend. He confirmed he knew he was being recorded. On cross-examination, the Defendant confirmed that he lived near the area of the robbery and could have run from his house but instead chose to drive to Crystal Palace before his run. He testified that the white shirt in exhibit 3 was his but that he had never seen the red bandana before.

Following the conclusion of the proof, the jury convicted the Defendant of aggravated robbery. The trial court later sentenced the Defendant to eight years at 85% as a Range I, Standard Offender. The Defendant filed a motion for new trial which was denied by the trial court on January 27, 2017. A timely notice of appeal was filed, and this case is now properly before this court.

## ANALYSIS

**I. Continuation of Case.** The Defendant argues that the trial court erred in permitting the Defendant to continue the case only if his bond were revoked. The Defendant contends that he was not aware of the red bandana until the morning of trial and that the trial court's attempt at punitive pre-trial detention of the Defendant was improper. The State responds that the Defendant had ample opportunity to review the physical evidence held by the State but chose not to do so. The State also argues that the Defendant has waived his claim that the trial court's attempt at punitive pre-trial detention was improper because the Defendant failed to raise this argument in his motion for new trial. Nevertheless, the State asserts that the Defendant's argument is meritless, and the trial court did not abuse its discretion.

The granting of a continuance lies within the sound discretion of the trial court, and this court will not reverse a decision regarding a continuance unless the trial court abused its discretion. State v. Schmeiderer, 319 S.W.3d 607, 617 (Tenn. 2010) (citing State v. Odom, 137 S.W.3d 572, 589 (Tenn. 2004)). "'An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair

trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted.'" Id. (quoting State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995)). The party requesting the continuance has the burden of showing that the court's action was prejudicial. State v. Goodman, 643 S.W.2d 375, 378 (Tenn. Crim. App. 1982). "The only test is whether the defendant has been deprived of his rights and an injustice done." Id.

The record shows that on the morning of trial, May 9, 2016, defense counsel requested a continuance on the basis that the State failed to disclose a red bandana allegedly worn by the Defendant in the robbery. Defense counsel asserted that there was no mention of this evidence in the discovery it received from the State and that the admission of such evidence would directly affect their defense at trial. The State responded that this case was previously set for trial on September 2, 2015, and was continued due to the Defendant's failure to appear. The State explained that it invited defense counsel to examine the evidence in the State's possession multiple times, and defense counsel failed to do so. The State argued that the white shirt and red bandana were referenced in the 911 call and witness statements and that the evidence was not withheld from defense counsel. The trial court noted that the crime occurred on August 11, 2013, that the case was originally set for trial on February 19, 2015, and that the trial had since been continued twice with report dates in between. The court noted that it was defense counsel's obligation to examine the State's evidence and that any factual questions regarding that evidence were to be explored in testimony at trial. The court stated that it would grant the continuance but would revoke the Defendant's bond upon doing so because "this ha[d] interfered with the administration of justice[.]" Defense counsel withdrew the motion for a continuance and requested to move forward with trial. The trial court noted that it was 12:30 p.m., that the proof would begin at 1:30 p.m. the next day, and that defense counsel could investigate any factual issues regarding the red bandana during that time.

As an initial matter, the State correctly observes that the Defendant did not argue that the trial court's grant of a continuance amounted to a punitive detention in its motion for new trial or at the hearing on the same. His motion states, in pertinent part, "[t]hat the [c]ourt erred in not allowing the [d]efense to continue the case when they were not told about physical evidence in the possession of the State until the day of trial." Relief on appeal is typically not available when a party is "responsible for an error" or has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error." See Tenn. R. App. P. 36(a). Moreover, "A party may not raise an issue for the first time in the appellate court." State v. Turner, 919 S.W.2d 346, 356-57 (Tenn. Crim. App. 1995). As such, the Defendant's argument regarding punitive pretrial detention is waived.

- 5 -

Waiver notwithstanding, the record reflects that there was no late disclosure by the State and that the Defendant had ample opportunity to review the State's evidence before trial. The Defendant argues that he was prejudiced because the State withheld this evidence and did not make the defense aware of the red bandana until the morning of trial. However, the record clearly reflects that defense counsel had multiple invitations from the State to view the physical evidence they possessed related to the case. On oral argument, defense counsel conceded that he was aware that the State held physical evidence and chose not to investigate. Furthermore, the record shows that the trial court gave defense counsel an additional day to review any evidence before the actual trial was to start. The record does not reflect nor has the Defendant shown that the trial court abused its discretion in this matter. The Defendant is not entitled to relief.

**II. Admission of Clothing.** Next, the Defendant argues that the trial court erred in admitting the white shirt and red bandana into evidence because the State failed to properly authenticate the evidence or establish an unbroken chain of custody. The Defendant asserts that the trial court used the wrong legal standard of review in admitting the evidence. The State responds that the trial court used the correct standard of review in admitting this evidence because the proof showed that the clothing was worn by the Defendant during the commission of the crime and discarded shortly thereafter.

"Generally, the admissibility of evidence rests within the trial court's sound discretion, and the appellate court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." State v. Franklin, 308 S.W.3d 799, 809 (Tenn. 2010) (citing State v. Lewis, 235 S.W.3d 136, 141 (Tenn. 2007)). A trial court is found to have abused its discretion when it applies "an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" Lewis, 235 S.W.3d at 141 (quoting State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006).

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). Therefore, the question of whether tangible evidence has been properly authenticated is left to the discretion of the trial court. State v. Cannon, 254 S.W.3d 287, 295 (Tenn. 2008) (citing State v. Scott, 33 S.W.3d 746, 752 (Tenn. 2000); State v. Beech, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987)). The trial court's determination will not be disturbed in the absence of a clearly mistaken exercise of such discretion. State v. Holbrooks, 983 S.W.2d 697, 701 (Tenn. Crim. App. 1998 (citing Beech, 744 S.W.2d at 587). Therefore, we will not reverse unless the "'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an

injustice to the party complaining.'" State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

To admit tangible evidence, the party offering the evidence must either introduce a witness who is able to identify the evidence or must establish an unbroken chain of custody. Cannon, 254 S.W.3d at 296; Holbrooks, 983 S.W.2d at 700 (citing State v. Goodman, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982)). This rule ensures that "'there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" Scott, 33 S.W.3d at 760 (quoting State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)). However, absolute certainty of identification is not required. See State v. Kilpatrick, 52 S.W.3d 81, 87 (Tenn. Crim. App. 2000) (citing Ritter v. State, 462 S.W.2d 247, 250 (Tenn. Crim. App. 1970)). In addition, the Tennessee Supreme Court has observed:

> Even though each link in the chain of custody should be sufficiently established, this rule does not require that the identity of tangible evidence be proven beyond all possibility of doubt; nor should the State be required to establish facts which exclude every possibility of tampering. An item is not necessarily precluded from admission as evidence if the State fails to call all of the witnesses who handled the item. Accordingly, when the facts and circumstances that surround tangible evidence reasonably establish the identity and integrity of the evidence, the trial court should admit the item into evidence. On the other hand, if the State fails to offer sufficient proof of the chain of custody, the evidence should not be admitted . . . unless both identity and integrity can be demonstrated by other appropriate means.

Cannon, 254 S.W.3d at 295-96 (internal citations and quotation omitted).

The Defendant argues that the trial court used the wrong standard of review in admitting these items into evidence. In his brief, the Defendant re-characterizes Tennessee Rule of Evidence 901(a) as stating "authentication or identification [is] a condition precedent to admissibility." As noted above, Tennessee Rule of Evidence 901(a) in full states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." To the extent that the Defendant argues that the trial court used the wrong legal standard in admitting the evidence, we disagree.

The record shows that the State adequately authenticated and established the chain of custody for the white shirt and red bandana. First, the Defendant admitted that the white shirt in question was in fact his shirt. Additionally, the victim described the

Defendant as wearing a white shirt and red bandana during the robbery and identified the same clothing at trial. Derwin Gray observed the shirtless Defendant holding red and white clothing in his hand as he fled the scene. Finally, Officer Rasmussen recovered the white shirt and red bandana nearby the location of Defendant's arrest and identified the same clothing in its evidence bag at trial. Accordingly, the trial court properly admitted the white shirt and red bandana into evidence, and the Defendant is not entitled to relief.

**III. Admission of Jail Phone Calls.** The Defendant argues that the trial court erred in admitting the recordings of his jail phone calls into evidence because they were ambiguous and irrelevant. The State responds that the Defendant's statements were directly relevant to the issues at trial.

Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Evidence which is not determined to be relevant is inadmissible. Tenn. R. Evid. 402. In addition, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Unfair prejudice has been defined by the Tennessee Supreme Court as "'[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one.'" State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978) (quoting Fed. R. Evid. 403, Advisory Committee Notes). "Prejudice becomes unfair when the primary purpose of the evidence at issue is to elicit emotions of 'bias, sympathy, hatred, contempt, retribution, or horror." State v. Young, 196 S.W.3d 85, 106 (Tenn. 2006) (citations and internal quotation marks omitted). Whether evidence is relevant is a decision left to the discretion of the trial court, and this court will not overturn a trial court's determination regarding relevancy without a showing that the trial court abused its discretion. State v. Brown, 373 S.W.3d 565, 573 (Tenn. Crim. App. 2011) (citing State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995)). Additionally, as noted above, "the admissibility of evidence rests within the trial court's sound discretion, and the appellate court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." Franklin, 308 S.W.3d at 809 (citing Lewis, 235 S.W.3d at 141).

Prior to the admission of exhibit 7, the jail recordings of the Defendant, defense counsel objected based on relevance. The trial court overruled the objection on several grounds. Initially, it reasoned that "[the statements in the recordings] are the admissions or statements made in furtherance of a commission of a crime." During the jury-out hearing, the trial court relied upon State v. Munn, 56 S.W.3d 486 (Tenn. 2001), and further noted that "case law is abundantly clear that jail calls made by a defendant, jail

tapes are in fact admissible[.]" The State noted that the calls were provided to defense counsel on October 14, 2014, and that the parties had discussed the calls several times before trial. Defense counsel then argued that the Defendant's statements, such as "I messed up," were irrelevant, ambiguous, and did not indicate any guilt by the Defendant. The State responded that the Defendant's statements were relevant, made immediately after the Defendant was placed in jail, and constituted inculpatory statements. The trial court determined that there was "no reasonable justifiable expectation of privacy" for these phone calls and that they were admissible based upon State v. Ross, 49 S.W.3d 833 (Tenn. 2001), and Smith v. Maryland, 442 U.S. 735 (1979). The trial court further found that the Defendant's statements, including "I messed up," "I'm in jail, 201 Poplar," "go get the truck," and "don't know what I was thinking" all constituted statements made in furtherance of a conspiracy to cover up a crime which were admissible based on State v. Walker, 910 S.W.2d 381 (Tenn. 1995). The trial court deemed the statements to be relevant fact admissions and not hearsay.

Based on our review of the record, we agree with the trial court, and conclude that exhibit 7 was probative of the Defendant's identity and involvement in the instant offense. Discerning no abuse of discretion, the trial court properly admitted the Defendant's jail phone calls. He is not entitled to relief.

## CONCLUSION

Based on the foregoing reasoning and analysis, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE